# EXHIBIT A

# Disclosure Statement, Note and Security Agreement

| Borrower(s) (Name and mailing address) | Lender (Name, address, city and state) | Account No. |
|---|---|---|
| FRANK H MCINTYRE SR<br>312 CHEROKEE DRIVE<br>BROWNS MILLS NJ 08015 | CITIFINANCIAL SERVICES, INC.<br>516 HIGH STREET STE 5<br>MT HOLLY NJ 08060 | Date of Loan<br>11/29/2007 |

| ANNUAL PERCENTAGE RATE<br>The cost of Borrower's credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost Borrower. | Amount Financed<br>The amount of credit provided to Borrower or on Borrower's behalf. | Total of Payments<br>The amount Borrower will have paid after Borrower has made all payments as scheduled. |
|---|---|---|---|
| 12.75 % | $ 98,774.20 | $ 55,665.82 | $ 154,440.02 |

Payment Schedule:

| Number of Payments | Amount of Payments * | When Payments Are Due |
|---|---|---|
| 1 | $ 937.49 | 01/19/2008 |
| 239 | $ 642.27 | MONTHLY BEGINNING  02/19/2008 |
| | $ | |
| | $ | |

See the contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**Security:** [X]  If checked, Borrower is giving a security interest in real property.

**Late Charge:** If a payment is late, Borrower will be charged  5.0 % of the amount in default.

**Prepayment:** If Borrower pays off early, Borrower will not have to pay a penalty; and will not be entitled to a refund of part of the finance charge.

* Does not include any insurance premium.

Additional Information:

| Total amount of first month's payment including insurance premiums, if any. | PRINCIPAL | POINTS | FINAL PAYMENT DATE | DATE CHARGES BEGIN |
|---|---|---|---|---|
| $ 937.49 | $ 56,003.20 | $ 337.38 | 12/19/2027 | 12/04/2007 |

## INSURANCE DISCLOSURE

**NOTICE TO THE BORROWER: YOU MAY BE REQUIRED TO PURCHASE PROPERTY INSURANCE AS A CONDITION OF RECEIVING THE LOAN. IF PROPERTY INSURANCE IS REQUIRED, YOU MAY SECURE INSURANCE FROM A COMPANY OR AGENT OF YOUR OWN CHOOSING.**

**Required Insurance Disclosure:**
If Borrower grants Lender a security interest as indicated in this document, insurance to protect the Lender's interest in the collateral may be required. **If this loan is secured by real property, or mobile/manufactured home, then fire, extended coverage, collision and/or comprehensive casualty insurance is required naming Lender as loss payee, until the loan is fully paid.** The amount of such insurance must be sufficient to satisfy the unpaid balance of the loan, or be equal to the value of the collateral, whichever is less. Such insurance may be provided through an existing policy or a policy obtained independently and purchased by Borrower. Borrower may obtain such insurance from any insurer that is reasonably acceptable to Lender.

**Optional Insurance Disclosure:**
Borrower is not required to purchase optional insurance products, such as:  Credit Life, Credit Disability, Involuntary Unemployment Insurance or any other optional insurance products. Lender's decision to grant credit will not be affected by Borrower's decision to purchase or decline to purchase optional insurance.

Coverage will not be provided unless Borrower signs and agrees to pay the applicable monthly premium in addition to the monthly loan payment disclosed above.

Borrower should refer to the terms contained in the applicable certificate or policy of insurance issued for the exact description of benefits, exclusions and premium rates.

If Borrower purchases insurance, Borrower's monthly payment will include both the monthly loan payment disclosed above and the applicable monthly premiums.

I/We request the following insurance:

| Premium Due with the First Month's Loan Payment | First Year's Premium * | Insurance Type: |
|---|---|---|
| $        NONE | $ | |
| $        NONE | $ | |
| $        NONE | $ | |

_Frank H McIntyre Sr_  11/29/07
First Borrower's Signature                    Date

_____
Second Borrower's Signature                    Date

(* First year's premiums are calculated on the assumption that monthly loan payments are timely made). Accrued but unpaid premium, if not paid earlier, will be due and payable at the time of the final payment on the loan. However, failure to pay premiums may result in termination of insurance as described below.

**Termination of Insurance:**
Borrower may cancel any of the optional insurance products offered at any time. The optional insurance will terminate upon the earliest of the following occurrences:
(1) the Lender's receipt of Borrower's written request for termination;
(2) on the date when the sum of past due premiums equal or exceed four times the first month premium;
(3) termination pursuant to the provisions of the insurance certificate;
(4) payment in full of Borrower's Loan;
(5) death of Borrower.

## SECONDARY MORTGAGE LOAN

**TERMS:** In this Disclosure Statement, Note and Security Agreement, the word "Borrower" refers to the persons signing below as Borrower, whether one or more. If more than one borrower signs, each will be responsible, individually and together, for all promises made and for repaying the loan in full. The word "Lender" refers to the lender, whose name and address are shown above.

**PROMISE TO PAY:** In return for a loan that Borrower has received, Borrower promises to pay to the order of Lender the Principal amount shown above, plus interest on the unpaid Principal balance from the Date Charges Begin shown above at the agreed rate of  12.65 % per annum. Lender will compute interest on the unpaid Principal balance on a daily basis from the date charges begin until Borrower repays the loan. If Borrower does not make sufficient or timely payments according to the payment schedule above, Borrower will incur greater interest charges on the loan. On the N/A month anniversary of the Date of Loan shown above, the rate of interest shall decrease to N/A % per annum on the unpaid Principal balance until the balance is paid in full.

Any amount shown above as Points has been paid by Borrower as a prepaid finance charge and is in addition to interest at the indicated rates. Any Points are earned prior to any interest on the loan balance. In the event of prepayment of the loan, prepaid Points will not be refundable to the Borrower.

Borrower's Initials _FM_

Original  (Branch)        Copy  (Customer)

Page 1 of 3


Principal and interest shall be payable in the monthly installments shown above, except that any appropriate adjustments will be made to the first and final payments, beginning on the first payment date shown above and continuing on the same day in each following month until paid in full. Upon the final payment date, the entire outstanding balance of Principal and interest evidenced by this Disclosure Statement, Note and Security Agreement shall be due and payable. Any payment(s) which Lender accepts after the final payment date do not constitute a renewal or extension of this loan unless Lender so determines.

Each payment shall be applied as follows: (1) late charges and monthly loan payments due (first to interest, then principal), (2) insurance premiums due, (3) unpaid interest to the date of payment, if any, then (4) principal. Lender may collect interest from and after maturity upon the unpaid Principal balance at either the maximum rate permitted by the then applicable law or the rate of interest prevailing under this Disclosure Statement, Note and Security Agreement.

**PREPAYMENT:** Borrower may prepay this loan in whole or in part at any time without penalty. However, upon partial prepayment, interest will continue to accrue on any remaining Principal balance. Partial prepayment will not affect the amount or due date of subsequent scheduled payments on the loan, but may reduce the number of such payments.

**SECURITY:** This loan is secured by a non-purchase money Mortgage on real property located at  312 CHEROKEE DRIVE
BROWNS MILLS NJ 08015
See the Mortgage for terms applicable to Lender's interest in Borrower's real property ("Property").

**LATE CHARGE:** If any installment is not paid within 15 days after its scheduled due date, Lender may charge Borrower a late charge of  5.0 % of the amount of payment in default. Lender, may, at its option, waive any late charge or portion of the late charge without waiving its right to require a late charge with regard to any other late payment. Only one late charge will be collected for each installment which is paid late.

**RETURNED CHECK CHARGE:** Lender may charge Borrower a returned check charge of $  20.00 if Borrower's payment check, negotiable order of withdrawal, or similar instrument is dishonored or not paid by the depository institution on which it is paid.

**LOAN CHARGES:** If a law that applies to this loan and that sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under this loan or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge.

**DEFAULT:** Borrower will be in default if (1) Borrower does not make any scheduled payment on time; or (2) Borrower defaults in the performance of any terms, conditions or provisions of any mortgage or deed of trust securing the payment of this Note.

Subject to Borrower's right to any notice of default, right to cure default, and any other applicable laws, if Borrower defaults, Lender may require Borrower to repay the entire unpaid Principal balance and any accrued interest at once. Lender's failure to exercise or delay in exercising any of its rights when default occurs does not constitute a waiver of those or any other rights under this Note. Lender may exercise its option to accelerate (that is, to declare the entire amount due and payable at once) during any default by Borrower, even if Lender has not done so before. If this debt is referred for collection to an attorney not a salaried employee of Lender, Lender shall be entitled to collect all reasonable costs and expenses of collection, including, but not limited to, court costs and reasonable attorney's fees of 15% of the first $500, 10% of the next $500 and 5% on the remaining amount owed on this Note. At least fifteen (15) days before such suit is brought, Lender or Lender's attorney will send to Borrower at Borrower's last known address a statement of Lender's intention to sue, specifying the amount of the principal, interest and any other charge owed to Lender.

**LAW THAT APPLIES:** New Jersey law and federal law, as applicable, govern this Disclosure Statement, Note and Security Agreement. If any part is unenforceable, this will not make any other part unenforceable. In no event will Borrower be required to pay interest or charges in excess of those permitted by law.

**OTHER RIGHTS:** Lender may accept payments after maturity or after a default without waiving its rights with respect to any subsequent default in payment. Borrower agrees that Lender may extend time for payment after maturity without notice. The terms of this agreement can be waived or changed only in a writing signed by Lender.

Where the context requires, singular words may be read in the plural and plural words in the singular, and references to the masculine gender may be read to apply to the feminine gender.

**OTHER TERMS:** Each Borrower under this Disclosure Statement, Note and Security Agreement, if more than one, agrees that Lender may obtain approval from one Borrower to change the repayment terms and release any Property securing the loan, or add parties to or release parties from this agreement, without notice to any other Borrower and without releasing any other Borrower from his responsibilities. Lender does not have to notify Borrower before instituting suit if the note is not paid, and Lender can sue any or all Borrowers upon default by any Borrower.

Borrower, endorsers, sureties and guarantors, to the extent permitted by law, each waive their right to require Lender to demand payment of amounts due, to give notice of amounts that have not been paid, to receive notice of any extensions of time to pay which Lender allows to any Borrower and to require Lender to show particular diligence in bringing suit against anyone responsible for repayment of this loan, and additionally, waive benefit of homestead and exemption laws now in force or later enacted, including stay of execution and condemnation, on any Property securing this loan and waive the benefit of valuation and appraisement.

This Disclosure Statement, Note and Security Agreement shall be the joint and several obligation of all makers, sureties, guarantors and endorsers (i.e., the obligation of each party as well as of all of them together) and shall be binding upon them, their heirs, successors, legal representatives and assigns.

If any part of the Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and accompanying Itemization of Amount Financed is unenforceable, this will not make any other part unenforceable.

**REFINANCING:** The overall cost of refinancing an existing loan balance may be greater than the cost of keeping the existing loan and obtaining a second loan for any additional funds Borrower wishes to borrow.

(Intentionally left blank)

**AUTHORIZATION TO USE CREDIT REPORT:** By signing below, Borrower authorizes Lender to obtain, review and use information contained in the Borrower's credit report in order to determine whether the Borrower may qualify for products and services offered by Lender. This authorization terminates when Borrower's outstanding balance due under this Disclosure Statement, Note and Security Agreement is paid in full. Borrower may cancel such authorization at any time by writing the following: Transaction Processing, 300 St. Paul Place, BSP13A, Baltimore, MD 21202. In order to process Borrower's request, Lender must be provided Borrower's full name, address, social security number and account number.

The following notice applies only if this box is checked. ☐

---

### NOTICE

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

---

By signing below, Borrower agrees to the terms contained in this Note, acknowledges receipt of a copy of this Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and of the accompanying Itemization of Amount Financed, and authorizes the disbursements stated in those documents.

### NOTICE TO BORROWER

**Read this promissory note or loan agreement before you sign.**
**Do not sign this promissory note or loan agreement if it contains blank spaces.**
**The promissory note or loan agreement is secured by a secondary mortgage on your real property.**

WITNESSES:

_Noel C. Titko_

SIGNED:

_Frank H McIntyre Sr_ (Seal)
FRANK H MCINTYRE SR -Borrower
_____ (Seal)
-Borrower
_____ (Seal)
-Borrower

_Noel C. Titko_

CITIFINANCIAL SERVICES, INC.

By: _Noel C Titko SBAE_
(Name and Title)     11/29/2007  16:26:25

**SECURITY INTEREST OF NONOBLIGOR:** Borrower only is personally liable for payment of the loan. Nonobligor is liable and bound by all other terms, conditions, covenants, and agreements contained in this Disclosure Statement, Note and Security Agreement, including but not limited to the right and power of Lender to repossess and sell the Property securing this loan, in the event of default by Borrower in payment of this loan.

_____ (Seal)  _____ (Seal)
Signature     Date     Signature     Date

## ALLONGE TO NOTE

Original Loan Amount: $56,003.20
Note Date:              11/29/2007
Borrower(s):            FRANK H. MCINTYRE SR.
Address:                312 CHEROKEE DRIVE
                        BROWNS MILLS, NJ 08015

### PAY TO THE ORDER OF

CITIFINANCIAL SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY

### WITHOUT RECOURSE

CFNA RECEIVABLES (PA), INC. F/K/A CITIFINANCIAL SERVICES, INC., A PENNSYLVANIA CORPORATION

By: _____      Dated: _____JUL 0 6 2016_____

Name: Susan Schotsch
Title:  VICE PRESIDENT

### PAY TO THE ORDER OF

_____

_____

_____

_____

### WITHOUT RECOURSE

CITIFINANCIAL SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY

By: _____      Dated: _____JUL 0 6 2016_____

Name: Danielle Burns
Title:  VICE PRESIDENT

EXHIBIT B

# RECORDING DATA PAGE

```
Consideration :
Code         :
Transfer Fee :
Recording Date: 12/04/2007
Document No   : 4508311    ccmoczul

CITIFINANCIAL
1404 RT 130 N
CINNAMINSON, NJ   08077


Receipt No    : 744686
Document No'   : 4508311
Document Type : MTG
Recording Date: 12/04/2007
Login Id      : ccmoczul

        Recorded
  Dec 04 2007 03:01pm
Burlington County Clerk
```

**Clerk of Burlington County • 49 Rancocas Rd. • Mt. Holly, NJ 08060**
**609-265-5180**

MB 1 1 6 4 6 PG 9 7 7

# MORTGAGE

Mortgagor

FRANK H MCINTYRE SR
312 CHEROKEE DRIVE
BROWNS MILLS NJ 08015

Mortgagee/Lender
CitiFinancial Services, Inc.
(a Pennsylvania corporation)
516 HIGH STREET STE 5
MT HOLLY NJ 08060

After recording, return to:
CITIFINANCIAL SERVICES, INC.
516 HIGH STREET STE 5
MT HOLLY NJ 08060

BURLINGTON COUNTY CLERK

2007 DEC -4 A 8: 1

RECEIVED

## WORDS USED OFTEN IN THIS DOCUMENT:

A. "Mortgage": This document, which is dated 11/29/2007 , will be called the "Mortgage".

B. "Borrower": FRANK H MCINTYRE SR                                                        will be called
"Borrower". Borrower may be more than one person.

C. "Mortgagor": FRANK H MCINTYRE
                                                                    will sometimes be called
"Mortgagor" and sometimes be called "I". This Mortgagor includes all persons owning an interest in the Property and may not be the same person as Borrower.

D. "Lender": CitiFinancial Services, Inc., a Pennsylvania corporation. Lender's address is
516 HIGH STREET STE 5   MT HOLLY NJ 08060                    Lender is also known as Mortgagee.

E. "Note": The Promissory Note signed by Borrower and dated the same date as this Mortgage will be called the "Note".
The Note shows that Borrower owes Lender
FIFTY-SIX THOUSAND THREE AND 20/100 DOLLARS
Dollars ($ 56,003.20) plus interest which Borrower has promised to pay in monthly payments of principal and interest, and to pay in full by 12/19/2027 .

F. "Property": The Property that is described below in the section entitled "Description of Property" will be called "Property".

## DESCRIPTION OF THE PROPERTY

I give, grant, convey and mortgage to Lender the rights in the property described in (A) through (G) below:

(A) The Property which is located at 312 CHEROKEE DRIVE               ,   BROWNS MILLS             ,
BURLINGTON   ,   NJ   08015             . It has the following legal description:

SEE ATTACHED EXHIBIT A

(B) All buildings and other improvements that are located on the property described in paragraph (A) of this Section.

(C) All rights in other property that I have as owner of the property described in paragraph (A) of this Section. These rights are known as easements, rights, appurtenances attached to the property, hereditaments, and tenements.

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the property described in paragraph (A) of this Section.

(E) All fixtures that are now or in the future will be on the property described in paragraphs (A) and (B) of this Section, and all replacements of and additions to those fixtures. Usually, fixtures are items that are physically attached to buildings, such as hot water heaters, and built-in appliances.

(F) All proceeds, to the extent necessary to repay the amount I owe Lender, which come from the taking of all or any part of the property by a government agency, or by anyone else authorized by law.

(G) All of the rights and property described in paragraphs (A) through (F) of this Section that I acquire in the future.

## EXPLANATION OF DIFFERENCE BETWEEN BORROWER AND MORTGAGOR:

In this Mortgage, in some instances, Mortgagor may include one or more persons who may not be the Borrower. In that case, then only the Borrower is liable for the payment of the Note. In any event, Mortgagor is bound by all other agreements and promises contained in this Mortgage and also the right of Lender to foreclose on and sell the Property in the event Borrower does not keep his promise to pay the Note.

Unofficial Document

MB 1164b PG973

**MORTGAGOR'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY:**

I mortgage the Property to Lender, subject to the terms of this Mortgage. This means that, by signing this Mortgage, I am giving Lender those rights that are stated in this Mortgage, and also those rights that the law gives to Lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if:

(A) Borrower fails to pay all the amounts that Borrower owes to Lender as stated in the Note.

(B) I fail to pay, with interest, any amounts that Lender spends under this Mortgage, to protect the value of the Property and Lender's rights in the Property.

(C) I fail to keep any or all of my other promises and agreements under this Mortgage.

**MORTGAGOR'S RIGHT TO MORTGAGE THE PROPERTY AND MORTGAGOR'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY:**

I promise, except for the exception listed in this paragraph, that:

(A) I lawfully own the Property;

(B) I have the right to mortgage the Property to Lender:

(C) There are no outstanding claims or charges against the Property, except for a Mortgage dated __03/24/2005__ , from

__FRANK H MCINTYRE SR_____ to

__ASC_____ , which is filed and recorded in the __BURLINGTON_____
(First Mortgage)
County Clerk/Register's Office, in Mortgage Book __10273__ , at Page __463__

I give general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claim of such rights.

**BORROWER'S PROMISE TO PAY:**

Borrower promises to promptly pay to Lender, when due, the principal and interest under the Note.

**MORTGAGOR'S OBLIGATION TO PAY CHARGES AND ASSESSMENTS AND TO SATISFY CLAIMS AGAINST THE PROPERTY:**

I will pay all taxes, assessments and any other charges that may be imposed on the Property, and pay the other mortgage mentioned above, when they become due.

**MORTGAGOR'S OBLIGATION TO OBTAIN AND TO KEEP HAZARD INSURANCE ON THE PROPERTY:**

I will obtain hazard insurance to cover all buildings and other improvements that now or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, and hazards normally covered by "extended coverage" hazard insurance policies. The insurance must be in the amounts and for the periods of time to protect the Lender. Any insurance policy and renewals of the policy must include what is known as a "standard mortgage clause" to protect Lender. I will pay the premiums on the insurance policy when the premium payments are due. If I do not pay the premium payments when they are due, the Lender may pay the insurance premium and add the amount of the premium paid, plus interest, to the amount owed on the Note.

**MORTGAGOR'S OBLIGATION TO MAINTAIN THE PROPERTY:**

I will keep the Property in good repair. I will not destroy, damage or substantially change the Property, and I will not allow the Property to deteriorate.

I will not allow any "Hazardous Substances" to be used, kept or released on the Property. I will not do anything or allow anyone else to do anything affecting the Property which violates any "Environmental Law." These two sentences are not intended to keep me from using and storing on the Property small quantities of Hazardous Substances that would be normal for residential use and to maintain the Property.

I will promptly notify you in writing if I become aware of any investigation, litigation, claim or other action involving the Property, whether started by a government agency or by a private person. I will take whatever action is necessary to rid the Property of any Hazardous Substances as required by Environmental Law.

"Hazardous Substances" are things which are considered toxic or hazardous under Environmental Law and include these things: gasoline, kerosene, petroleum products that can catch fire or are toxic, toxic pesticides and herbicides, solvents that can explode, items containing asbestos or formaldehyde, and radioactive materials. Environmental Law means federal and state laws relating to health, safety or environmental protection.

**LENDER'S RIGHT TO INSPECT THE PROPERTY:**

Lender has the right to enter and inspect the property on reasonable notice and at any reasonable time.

**MORTGAGOR'S PROMISE NOT TO SELL OR TRANSFER THE PROPERTY:**

I promise that the Property (or any interest in the Property) will not be sold or transferred without Lender's prior written consent. However, I understand that Lender's consent is not needed for a transfer under the following circumstances:

(A) A lien subordinate to the lien of this Mortgage is created;

(B) A lien is created as a result of my purchase of household appliances;

(C) Upon my death, the Property is transferred to my relatives or heirs;

(D) The Property is leased for three years or less under a lease that does not give the tenant the right to purchase the Property;

(E) I transfer the Property to my spouse or children;

(F) The Property is transferred to my spouse in connection with an agreement or court decree concerning our divorce, legal separation, or property settlement;

(G) The Property is transferred to a trust of which I am a beneficiary, provided that I still have the right to occupy the Property; and

(H) Any other transfer described in regulations published by the Office of Thrift Supervision.

MB 1164 PG 974

**LENDER'S RIGHT TO TRANSFER THIS MORTGAGE:**

Lender may transfer or assign or sell this Mortgage to anyone without notifying Mortgagor in advance. If Lender does transfer or assign or sell this Mortgage to anyone then the transferee (that is the person, firm, or corporation that buys this Mortgage) gets all rights that Lender has.

**NOTICE:**

Lender may give any written notices regarding the note and this mortgage to Mortgagor by personal delivery or by ordinary mail at the address of the property.

**LENDER'S RIGHTS IF MORTGAGOR FAILS TO KEEP PROMISES AND AGREEMENTS (FORECLOSURE AND SALE):**

If I fail to keep any promise or agreement made in this Mortgage or in the Note, including the promise to pay when due the amounts that Borrower owes to Lender under the Note and under this Mortgage, then Lender may require immediate payment in full of the entire amount then remaining unpaid under the Note and under this Mortgage.

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property, and to have the Property sold. At this sale Lender, or another person, may acquire the property. This is known as "foreclosure and Sale". In any lawsuit for foreclosure and sale, Lender will have the right to collect all the costs allowed by law.

**ENFORCEMENT OF LENDER'S RIGHTS:**

If Lender does not exercise or enforce any of Lender's rights under this Mortgage. Note, or under the law, Lender will still have all those rights and Lender may exercise and enforce them in the future. Each of Lender's rights under the Note and this Mortgage is separate. Lender may exercise and enforce one or more of those rights as well as any of Lender's rights under the law one at a time or all at once.

**LENDER'S OBLIGATION TO DISCHARGE THIS MORTGAGE WHEN THE NOTE AND THIS MORTGAGE ARE PAID IN FULL:**

When Lender has been paid all amounts due under the Note and under this Mortgage, Lender will discharge this Mortgage, without charge, by delivering a certificate stating that this Mortgage has been satisfied and after that date this Mortgage will be void. Borrower shall pay all costs of recordation, if any.

By signing this Mortgage I agree to all of the above.

_Noel C. Titho_
Witness
Noel C. Titho

_Frank H. McIntyre_
Mortgagor
Frank H. McIntyre

_____
Mortgagor

**Acknowledgement**

State of New Jersey

_Burlington_ County } ss

On this _29_ day of _November_ , _2007_ , before me personally came and appeared
_Frank H. McIntyre_ _____ to me known to be,
and who I am satisfied, are the makers of and the persons described in and who executed the foregoing instrument and to having made known to them the contents of this document, they did duly acknowledge to me that they executed, and signed, sealed and delivered the same as their voluntary act and deed and purposes therein expressed.

Prepared by:

_Noel C. Titho_
Noel C. Titho

_Megan McDonagh_
Notary Public
Megan McDonagh

---

**REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST**

Lender requests the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, with a copy to P. O. Box 17170, Baltimore, MD 21203, of any default under the superior encumbrance and of any sale or other foreclosure action.

**MEGAN McDONAGH
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 1.21.08**


**TITLE SEARCH REPORT**

**EXHIBIT A**

ALL THAT CERTAIN PARCEL OF LAND IN TOWNSHIP OF PEMBERTON ,
BURLINGTON COUNTY, STATE OF NJ, AS MORE FULLY DESCRIBED IN
BOOK 06262 PAGE 172 ID# 660-1, BEING KNOWN AND DESIGNATED AS
LOTS 1 AND 2, BLOCK 660, ON THE TAX MAP OF THE TOWNSHIP OF
PERMBERTON. AND BEING MORE PARTICULARLY DESCRIBED AS A
METES AND BOUNDS PROPERTY. BEING KNOWN AS 312 CHEROKEE
DRIVE BROWNS MILLS NJ 08015.

BEING THE SAME FEE SIMPLE PROPERTY CONVEYED TO FRANK H.
MCINTYRE, SR. AND BELINDA C. MCINTYRE, HUSBAND AND WIFE FROM
HENRY G. CISNEROS, SECRETARY OF HOUSING AND URBAN
DEVELOPMENT, BY DEED RECORDED ON 02/24/1994 IN BOOK 4684,
PAGE 55. BY WARRANTY DEED FROM THE SAID BELINDA C MCINTYRE
HAVING CONVEYED HER INTEREST TO THE SAID FRANK H MCINTYRE
, DATED 03/15/2005 RECORDED ON 03/23/2005 IN BOOK 06262, PAGE
172 IN BURLINGTON COUNTY RECORDS, STATE OF NJ.

Unofficial Document

MB 1 1 6 4 6 PG 9 7 6

# ADJUSTMENT OF TERMS AGREEMENT

| Borrower(s) (Name and Address)<br>FRANK H MCINTYRE SR<br><br>312 CHEROKEE DRIVE<br>BROWNS MILLS NJ 08015 | Lender (Name and Address)<br>CitiFinancial<br>516 HIGH STREET STE#5<br>MT HOLLY SQUARE SHOPP CTR<br>MT HOLLY  NJ  08060 | Account No.<br><br>Date<br>11/17/2008 |
|---|---|---|

WHEREAS, Borrower has a loan with Lender as evidenced by a promissory note dated 11/29/2007 .

WHEREAS, Borrower has requested to modify the payment schedule of said loan;

NOW, therefore, the parties agree to amend the payment schedule as follows:

Original Monthly Loan Payment Amount.................................$ 642.27

Present Unpaid Balance......................................................$ 55,681.30

Amended Monthly Loan Payment Amount..............................$ 524.03

Amended Next Payment Due Date.........................................11/19/2008       * Payments due
monthly until paid in
full.

Although your loan has been rescheduled and your loan term has been adjusted, this did not change the amount of coverage or terms of the insurance originally written in connection with your loan. For those who purchased a monthly insurance product, the monthly premium will be added to the monthly loan amount and will be indicated on the monthly statements. If you purchased insurance coverage, it remains in force according to the original certificate or policy issued regardless of any rescheduling and/or adjustment of loan payments or extension granted by Lender. Further, your insurance may not cover as much of your debt and/or loan payment as it might have before your loan was rescheduled or adjusted and the insurance may expire before the loan is paid in full.

Borrower understands that the Lender has extended additional credit in the amount of $ NONE ,
which is included in the amount disclosed as "Present Unpaid Balance". Borrower agrees to repay the total amount disclosed as the "Present Unpaid Balance" under the amended terms and further agrees that all other terms and conditions of the Borrower's loan continue in full force and effect.

I understand and agree that if my existing loan is a precomputed loan, it may be converted to an interest bearing loan, which means simple interest will accrue on my outstanding principal balance each day until the loan is paid in full.

Borrower understands that this adjustment of terms is being processed on a temporary basis. Lender reserves the right, upon evaluation of your financial circumstances, to re-adjust your account up to its original terms, however no adjustment may be made sooner than six (6) months from the effective date of this agreement.

Borrower FRANK H MCINTYRE SR

Borrower

The Adjustment of Terms proposed above,
if processed on your account,
will discontinue your participation in
CitiFinancial's Rate Reduction Plan.

LENDER
CitiFinancial

By:

Witness

Original (Branch)    Copy (Customer)

After Recording Return to:

Bayview Loan Servicing, LLC
Attn: Collateral Department
4425 Ponce de Leon Blvd., 5th Floor
Coral Gables, FL 33146

_____ [Space Above This Line For Recording Data] _____

## LOAN ADJUSTMENT AGREEMENT

This loan adjustment agreement is made and entered into as of December 16, 2016 (the "Effective Date"), by and between, Bayview Loan Servicing, LLC, ("Servicer") and FRANK H MCINTYRE SR ("Borrower").

### RECITALS

A. Servicer is the holder or servicing agent of the holder of that certain Promissory Note ("Note") dated 11/29/2007, executed by Borrower or Borrower's predecessor-in-interest in the original principal sum of $56,003.00 .

B. The note evidences a loan ("Loan") to Borrower or Borrower's predecessor-in-interest on 11/29/2007, in the original principal sum of $56,003.00 along with a Deed of Trust or Mortgage ("Security Instrument") securing said Note. The Security Instrument creates a secured lien on certain real property ("Property") owned by Borrower (and is more specifically described in the Security Instrument). The Note and Security Instrument and all other loan documents related to the Loan are hereinafter collectively referred to as the "Loan Documents".

C. Due to adverse economic circumstances, Borrower has requested Servicer to adjust the scheduled amortization of the Note to permit Borrower to meet Borrower's obligations to Servicer in full and in a timely manner. The requested adjustment will benefit Borrower, Servicer and any junior lien holder, by avoiding the possible foreclosure of the Loan by Servicer. Accordingly, it is considered to be in the best interest of all concerned to enter this Loan Adjustment Agreement ("Agreement").

D. Both Borrower and Servicer hereby agree that Servicer may, in its sole discretion, record this Agreement.

### AGREEMENT

NOW, THEREFORE, Borrower and Servicer hereby agree as follows:

1. NOTE MODIFICATIONS:
   (a) Outstanding Debt:
   Borrower agrees that the unpaid principal balance due on the Note of $55,250.71 , shall be decreased by $27,034.98 the amount of the unpaid installments, interest, late charges, fees and costs, and, if applicable, any advances for unpaid property taxes and/or insurance premiums ("Unpaid Sums Due"), for a total unpaid principal balance due of $28,215.73 ("New Balance"). Based on the consideration listed above, and other good and valuable consideration, Servicer agrees to forgive $32,146.25. You will never be required to pay this amount. There could be income tax consequences related to this forgiveness and you are advised to seek guidance from an independent tax professional. Borrower agrees to the accuracy of the allegations contained in the above Recitals as well as to the authenticity and validity of each document referred to herein and to the validity of the unpaid sums due and the New Balance. Interest and payments will accrue on the New Balance at the interest rates, whether adjustable, variable or fixed, provided in the Note, unless modified by this Agreement.

   (b) New Monthly Payments, Payment Adjustments:
   Effective with the Borrower's monthly payment due 02/01/2017, Borrower's monthly principal and interest payment will be $262.02 . The estimated monthly escrow payment will be $0.00 . All payments received by Servicer will be credited towards amounts due under the loan.

   (c) New Interest Rate:
   Effective on 01/01/2017, Borrower's rate of interest will be 11.004% and will remain fixed for the remaining life of the loan.

   (d) New Maturity Date:

The maturity date will be 01/01/2057, on which date any unpaid interest and all other sums due shall be paid in full.

**2.   ESTABLISHMENT OF IMPOUND/ESCROW ACCOUNT:**
Borrower acknowledges that Servicer will establish an impound/escrow account for the collection of property taxes and insurance premiums if such account is not currently in existence. Servicer will analyze the impound/escrow account from time to time. As a result of this analysis, the escrow portion of Borrower's monthly payment may change. Borrower further acknowledges that the escrow portion of his/her monthly payment may be substantially higher than the estimate. (Note: In certain states, impound/escrow accounts do not collect for payment of taxes pertaining to Bond/Special Assessments and Irrigation/Water District).

**3.   MORTAGE INSURANCE:**
Borrower agrees that the mortgage insurance premiums on the Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of this Agreement.

**4.   AGREEMENT NOT TO ENCUMBER:**
Borrower agrees that it will not voluntarily or involuntarily: (i) grant any interest in or option with respect to, any of the Property; or (ii) create or permit to exist any lien, security interest, or other charge or encumbrance upon or with respect to any of the Property, except for Servicer's already existing security interest and lien, or sell the Property for the benefit of itself or any party or in any manner other than that contemplated by this Agreement.

**5.   ASSIGNMENT OF LEASES AND RENTS AND RECEIVERSHIP:**
The existing Mortgage and Note shall be amended to include the following:  In the event the loan is in default and Borrowers are generating any gross income from the property by virtue of a tenancy or any other arrangement, Borrowers agree to assign and transfer to Servicer the right title and interest of Borrower in all existing and future leases and agreements whether or not in writing, and any rents and deposits derived and collected therefrom, affecting and pertaining to the use enjoyment or occupancy of any part of the premises. Borrower consents to the entry by Servicer, Servicer's agent, or court appointed receiver or designee, to enter the premises to collect the rents and enforce the leases. Borrower further consents to the appointment of a court appointed Receiver in the event the loan is in default.

**6.   NO OTHER CHANGES:**
Except as expressly adjusted by this Agreement, all of the covenants, agreements, stipulations, and conditions in the Note and the Security Instrument remain unmodified and in full force and effect. The Security Instrument continues to secure on a first and prior lien basis the due and punctual payments of the Note, as modified by this Agreement. None of Borrower's obligations or liabilities under the Security Instrument shall be diminished or released by any provisions herein.  Nor shall this Agreement in any way impair, diminish, or affect any of the Borrower's rights or remedies in the Security Instrument whether such rights or remedies arise herein or by operation of law. Any inserted terms, changes or additions to this Agreement will immediately render it null and void. Borrower is encouraged to review this Agreement with his/her legal advisor prior to signing it, but by signing the below Borrower has voluntarily signed this Agreement.

**7.   NO RELIANCE; CONSTRUCTION:**
Each of the parties hereto hereby declares that, prior to the execution of this Agreement, they have apprized themselves of sufficient relevant data in order that they might intelligently exercise their own judgments in deciding on the contents of this Agreement and whether to execute this Agreement. Borrower declares that his/her decision to execute this Agreement is not as a result of undue influence or duress, and not predicated on or influenced by any declarations or representations not set forth in this Agreement, by Servicer, or any other person or party or any predecessors in interest, its successors, assigns, officers, directors, employees, agents or attorneys. Each of the parties hereto hereby further acknowledges and agrees that each of them has had significant input in the development of this Agreement and this Agreement shall not therefore be construed.

**8.   NO ORAL MODIFICATION:**
This Agreement may not be amended or modified in any way except by a written instrument executed by all of the parties hereto.

**9.   SUCCESSORS AND ASSIGNS:**
This Agreement shall be binding upon and inure to the benefit of the signatories to this Agreement and each of their respective successors and assigns. The obligations of the signatories to this Agreement shall not be delegated or assigned.

**10. ATTORNEY'S FEES:**
In the event that any party hereto brings suit for the collection of any damages resulting from, or the injunction of any action constituting, a breach of any terms or provisions of this Agreement, then the prevailing party shall be entitled to recover all reasonable court costs and attorney's fees, at all levels.

Borrower and Lender agree that if there is a pending foreclosure action that results in a voluntary dismissal as a result of a modification or a similar settlement between Borrower and Lender then Borrower and Lender will each pay for their respective attorney fees and costs and neither party will be responsible for the other parties attorneys fees and costs.

**11. PARTIAL INVALIDITY:**
If any term, covenant or condition of this Agreement or its application to any person or circumstances shall be held to be illegal, invalid or unenforceable, the remainder of this Agreement or the application of such term or provisions to other persons or circumstances shall not be affected, and each term hereof shall be legal, valid and enforceable to the fullest extent permitted by law, unless an essential purpose of this Agreement would be defeated by the loss of the illegal, unenforceable, or invalid provision. In the event of such partial invalidity, the parties shall seek in good faith to agree on replacing any such legally invalid provisions with valid provisions which, in effect, will, from an economic viewpoint, most nearly and fairly approach the effect of the invalid provision and the intent of the parties in entering into this Agreement.

IN WITNESS WHEREOF, Servicer and Borrower have executed this Loan Adjustment Agreement,

Borrower:

By: _Frank H McIntyre Sr_  Date: _12/24/16_
FRANK H MCINTYRE SR

Servicer:

By: _____  Date: **DEC 27 2016**
Vice President, Bayview Loan Servicing, LLC    **Danny Garcia**

Asset Manager: Juan Del Rio

Phone Number: (844) 276-4906 Monday - Friday 9:00 am to 6:00 pm ET

Fax Number:    (305) 817-5205

E-mail:        JuanDelRio@bayviewloanservicing.com

**STATE OF NEW JERSEY NOTARY ACKNOWLEDGEMENT**


STATE OF      NEW JERSEY            )
                                    ) SS
COUNTY OF     Burlington            )

On this __24__ day of __December__ 20 16 , before me, the subscriber personally appeared
_____ Frank H. McIntyre _____
who, I am  satisfied, is/are the person(s) named in and who executed the within instrument, and thereupon
acknowledged that he/she/they signed, sealed and delivered the same as his/her their act and deed, for the
purposes therein expressed.


```
RACHEL M PUIGDOLLERS
Notary Public
State of New Jersey
My Commission Expires Nov 30, 2020
```

By: _Rachel M Puigdollers_
Notary Public: _Rachel M Puigdollers_
My Commission Expires: _Nov. 30 2020_

EXHIBIT C

| RECORDING INFORMATION SHEET | 49 RANCOCAS RD, MT. HOLLY, NJ 08060 |
|---|---|

| INSTRUMENT NUMBER: 5227052 | DOCUMENT TYPE: ASSIGNMENT OF MORTGAGE |
|---|---|

**Official Use Only**

**Document Charge Type** ASSIGNMENT OF MORTGAGE

**Return Address** *(for recorded documents)*
LLC SIMPLIFILE
4844 NORTH 300 WEST
PROVO  UT  84604

TIMOTHY D. TYLER
BURLINGTON COUNTY

RECEIPT NUMBER
8333407
RECORDED ON
June  28, 2016 11:12 AM

INSTRUMENT NUMBER
5227052

BOOK: OR13228
PAGE:  4900

| No. Of Pages *(Excluding Recording Information and/or Summary Sheet)* | 1 |
|---|---|
| Consideration Amount | $0.00 |
| Recording Fee | $40.00 |
| Realty Transfer Fee | $0.00 |
| Total Amount Paid | $40.00 |

| Municipality | PEMBERTON TWP |
|---|---|
| Parcel Information | **Block:** N/A **Lot:** N/A |
| First Party Name | CFNA RECEIVABLES PA INC |
| Second Party Name | CITIFINANCIAL SERV |

Additional Information (Official Use Only)

Ctrl Id: 5424393 Recording Clerk: TEDDIC

*************************** *DO NOT REMOVE THIS PAGE.* ***************************
*COVER SHEET (DOCUMENT SUMMARY FORM) IS PART OF BURLINGTON COUNTY FILING RECORD*
******************* *RETAIN THIS PAGE FOR FUTURE REFERENCE.* *******************

Unofficial Document



# Burlington County Document Summary Sheet

BURLINGTON COUNTY CLERK

49 RANCOCAS RD

MOUNT HOLLY NJ 08060 1317

| **Transaction Identification Number** | 2730005 | 2046755 |
| --- | --- | --- |

**Return Address** *(for recorded documents)*

NATIONWIDE TITLE CLEARING INC.

2100 ALTERNATE 19 N

PALM HARBOR, FL 34683

**Official Use Only**

| | |
| --- | --- |
| **Submission Date** *(mm/dd/yyyy)* | 06/20/2016 |
| **No. of Pages** *(excluding Summary Sheet)* | 1 |
| **Recording Fee** *(excluding transfer tax)* | $40.00 |
| **Realty Transfer Tax** | $0.00 |
| **Total Amount** | $40.00 |

| **Document Type** | ASSIGNMENT OF MORTGAGE |
| --- | --- |

**Electronic Recordation Level**

L2 - Level 2 (With Images)

**Municipal Codes**

PEMBERTON TWP      29

**Bar Code(s)**

**Additional Information (Official Use Only)**

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Unofficial Document

**Book # OR 13228 Page # 4900 Inst. # 5227052**



| Type | ASSIGNMENT OF MORTGAGE | | | |
|---|---|---|---|---|
| Consideration | | | | |
| Submitted By | SIMPLIFILE, LLC. (SIMPLIFILE) | | | |
| Document Date | 06/20/2016 | | | |
| Reference Info | | | | |
| **Book ID** | **Book** | **Beginning Page** | **Instrument No.** | **Recorded/File Date** |
| OR | 11646 | 973 | 4508311 | |

**ASSIGNMENT OF MORTGAGE**

| ASSIGNOR | **Name** | **Address** |
|---|---|---|
| | CFNA RECEIVABLES PA INC FKA CITIFINANCIAL SERVICES INC A PENNS | |

| ASSIGNEE | **Name** | **Address** |
|---|---|---|
| | CITIFINANCIAL SERVICING LLC A DELAWARE LIMITED LIABILITY COMPANY | |

| Parcel Info | | | | | |
|---|---|---|---|---|---|
| **Property Type** | **Tax Dist.** | **Block** | **Lot** | **Qualifier** | **Municipality** |
| | | | | | |

*** DO NOT REMOVE THIS PAGE.**
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

When Recorded Return To:
CitiFinancial Servicing, LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, CFNA RECEIVABLES (PA), INC. F/K/A CITIFINANCIAL SERVICES, INC., A PENNSYLVANIA CORPORATION, WHOSE ADDRESS IS 300 ST. PAUL PLACE, LEGAL DEPARTMENT- 17TH FLOOR, BALTIMORE, MD 21202, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to CITIFINANCIAL SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY, WHOSE ADDRESS IS 300 ST. PAUL PLACE, LEGAL DEPARTMENT- 17TH FLOOR, BALTIMORE, MD 21202 (800)249-2181, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Mortgage is dated on 11/29/2007, made by FRANK H. MCINTYRE to CITIFINANCIAL SERVICES, INC., and recorded in Mortgage Book 11646, Page 973 and Instrument # 4508311, in the office of the Register of Titles and County Recorder in BURLINGTON County, New Jersey.

Property is commonly known as: 312 CHEROKEE DRIVE PEMBERTON TWP
BROWNS MILLS, NJ 08015.

Dated this 20th day of June in the year 2016.
CFNA RECEIVABLES (PA), INC. F/K/A CITIFINANCIAL SERVICES, INC., A PENNSYLVANIA
CORPORATION



**SUSAN SCHOTSCH**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA    COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 20th day of June in the year 2016, by Susan Schotsch as VICE PRESIDENT of CFNA RECEIVABLES (PA), INC. F/K/A CITIFINANCIAL SERVICES, INC., A PENNSYLVANIA CORPORATION, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

**NICOLE BALDWIN**
**COMM EXPIRES: 08/05/2016**

Nicole Baldwin
Notary Public State of Florida
My Commission # EE 222285
Expires August 5, 2016

Document Prepared By: E Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

| INSTRUMENT NUMBER:<br><br>**5233200** | DOCUMENT TYPE:<br><br>**ASSIGNMENT OF MORTGAGE** |
|---|---|

| **Document Charge Type** | ASSIGNMENT OF MORTGAGE |
|---|---|

**Official Use Only**

**Return Address** *(for recorded documents)*
LLC SIMPLIFILE
4844 NORTH 300 WEST
PROVO  UT  84604

TIMOTHY D. TYLER
BURLINGTON COUNTY

RECEIPT NUMBER
8339246
RECORDED ON
July  22, 2016 11:28 AM

INSTRUMENT NUMBER
5233200

**BOOK: OR13232**
**PAGE:  5122**

| **No. Of Pages**<br>*(Excluding Recording Information and/or Summary Sheet)* | 1 |
|---|---|
| **Consideration Amount** | $0.00 |
| **Recording Fee** | $40.00 |
| **Realty Transfer Fee** | $0.00 |
| **Total Amount Paid** | $40.00 |
| **Municipality** | PEMBERTON TWP |
| **Parcel Information** | **Block:**  N/A<br><br>**Lot:**  N/A |
| **First Party Name** | CITIFINANCIAL SERV |
| **Second Party Name** | BAYVIEW LOAN SERV |

**Additional Information (Official Use Only)**

Ctrl Id: 5432222 Recording Clerk: hcheesman

*************************** *DO NOT REMOVE THIS PAGE.* ***************************
*COVER SHEET (DOCUMENT SUMMARY FORM) IS PART OF BURLINGTON COUNTY FILING RECORD*
*************************** *RETAIN THIS PAGE FOR FUTURE REFERENCE.* ***************************



# Burlington County Document Summary Sheet

BURLINGTON COUNTY CLERK

49 RANCOCAS RD

MOUNT HOLLY NJ 08060 1317

| **Transaction Identification Number** | 2751680 | 2073713 |
|---|---|---|

**Recorded Document to be Returned by Submitter to:**

NATIONWIDE TITLE CLEARING INC.

2100 ALTERNATE 19 N

PALM HARBOR, FL 34683

**Official Use Only**

| | |
|---|---|
| **Submission Date** (mm/dd/yyyy) | 07/18/2016 |
| **No. of Pages** (excluding Summary Sheet) | 1 |
| **Recording Fee** (excluding transfer tax) | $40.00 |
| **Realty Transfer Tax** | $0.00 |
| **Total Amount** | $40.00 |
| **Document Type** | ASSIGNMENT OF MORTGAGE |
| **Electronic Recordation Level** | L2 - Level 2 (With Images) |

**Municipal Codes**

PEMBERTON TWP     29

**Bar Code(s)**

**Additional Information (Official Use Only)**

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Unofficial Document


| | Type | ASSIGNMENT OF MORTGAGE | | | |
|---|---|---|---|---|---|
| | Consideration | | | | |
| | Submitted By | SIMPLIFILE, LLC. (SIMPLIFILE) | | | |
| | Document Date | 07/16/2016 | | | |
| | Reference Info | | | | |

| | Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
|---|---|---|---|---|---|
| | OR | 11646 | 973 | 4508311 | |

| ASSIGNMENT OF MORTGAGE | ASSIGNOR | Name | Address |
|---|---|---|---|
| | | CITIFINANCIAL SERVICING LLC A DELAWARE LIMITED LIABILITY COMPANY | |
| | ASSIGNEE | Name | Address |
| | | BAYVIEW LOAN SERVICING LLC | |

| Parcel Info | | | | | |
|---|---|---|---|---|---|
| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
| | | | | | |

*** DO NOT REMOVE THIS PAGE.**
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

When Recorded Return To:
CitiFinancial Servicing, LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **CITIFINANCIAL SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY, WHOSE ADDRESS IS 300 ST. PAUL PLACE, LEGAL DEPARTMENT 17TH FLOOR, BALTIMORE, MD 21202, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to **BAYVIEW LOAN SERVICING, LLC, A DELAWARE LIMITED LIABILITY COMPANY, WHOSE ADDRESS IS 4425 PONCE DE LEON BLVD. 5TH FLOOR, ATTN: SAGITTARIUS GROUP, CORAL GABLES, FL 33146 (800)771-0299, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage is dated on 11/29/2007, made by **FRANK H. MCINTYRE SR.** to **CITIFINANCIAL SERVICES, INC.,** and recorded in Mortgage **Book 11646, Page 973 and Instrument # 4508311,** in the office of the Register of Titles and County Recorder in **BURLINGTON** County, **New Jersey.**
Property is commonly known as: 312 CHEROKEE DRIVE PEMBERTON TWP
BROWNS MILLS, NJ 08015.

**Dated this 16th day of July in the year 2016.**
**CITIFINANCIAL SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY**

_Marguerita Witzigman_
**MARGUERITA WITZIGMAN**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA    COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 16th day of July in the year 2016, by Marguerita Witzigman as VICE PRESIDENT of CITIFINANCIAL SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_Cynthia Albano_
**CYNTHIA ALBANO - NOTARY PUBLIC**
**COMM EXPIRES:** 08/01/2016

| |
|---|
| Cynthia Albano |
| Notary Public State of Florida |
| My Commission # EE 221270 |
| Expires August 1, 2016 |

**Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**

| INSTRUMENT NUMBER: 5432433 | DOCUMENT TYPE: ASSIGNMENT OF MORTGAGE |
| --- | --- |

**Official Use Only**

| Document Charge Type | ASSIGNMENT OF MORTGAGE |
| --- | --- |

**Return Address** *(for recorded documents)*
LLC SIMPLIFILE
4844 NORTH 300 WEST
PROVO UT 84604

JOANNE SCHWARTZ
BURLINGTON COUNTY

RECEIPT NUMBER
8545578
RECORDED ON
January 04, 2019 11:25 AM

INSTRUMENT NUMBER
5432433

BOOK: OR13369
PAGE: 8248

| **No. Of Pages** *(Excluding Recording Information and/or Summary Sheet)* | 1 |
| --- | --- |
| **Consideration Amount** | $0.00 |
| **Recording Fee** | $40.00 |
| **Realty Transfer Fee** | $0.00 |
| **Total Amount Paid** | $40.00 |
| **Municipality** | PEMBERTON TWP |
| **Parcel Information** | **Block:** N/A  **Lot:** N/A |
| **First Party Name** | BAYVIEW LOAN SERV |
| **Second Party Name** | CB4B |

Additional Information (Official Use Only)

Ctrl Id: 5693662 Recording Clerk: nsmith

*************************** *DO NOT REMOVE THIS PAGE.* ***************************
*COVER SHEET (DOCUMENT SUMMARY FORM) IS PART OF BURLINGTON COUNTY FILING RECORD*
******************* *RETAIN THIS PAGE FOR FUTURE REFERENCE.* *******************



# Burlington County Document Summary Sheet

BURLINGTON COUNTY CLERK

50 RANCOCAS RD

MOUNT HOLLY NJ 08060 1317

| **Transaction Identification Number** | 3684239 | 3194445 |
|---|---|---|

**Recorded Document to be Returned by Submitter to:**

MERIDIAN ASSET SERVICES - API

3201 34TH ST S STE 310

ST PETERSBURG, FL 33711

| **Official Use Only** | | |
|---|---|---|
| **Submission Date** *(mm/dd/yyyy)* | | 12/28/2018 |
| **No. of Pages** *(excluding Summary Sheet)* | | 1 |
| **Recording Fee** *(excluding transfer tax)* | | $40.00 |
| **Realty Transfer Tax** | | $0.00 |
| **Total Amount** | | $40.00 |
| **Document Type** | ASSIGNMENT OF MORTGAGE | |
| **Electronic Recordation Level** | L2 - Level 2 (With Images) | |
| **Municipal Codes** | | |
| | BURLINGTON COUNTY | 99 |

**Additional Information (Official Use Only)**

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

**Book # OR 13369 Page # 8248 Inst. # 5432433**



| Type | ASSIGNMENT OF MORTGAGE | | | | |
|---|---|---|---|---|---|
| Consideration | | | | | |
| Submitted By | SIMPLIFILE, LLC. (SIMPLIFILE) | | | | |
| Document Date | 10/31/2018 | | | | |
| Reference Info | | | | | |
| **Book ID** | **Book** | **Beginning Page** | **Instrument No.** | **Recorded/File Date** | |
| | 11646 | 973 | 4508311 | | |

**ASSIGNMENT OF MORTGAGE**

| ASSIGNOR | **Name** | **Address** |
|---|---|---|
| | FRANK H MCINTYRE SR | |
| | BAYVIEW LOAN SERVICING LLC | |

| ASSIGNEE | **Name** | **Address** |
|---|---|---|
| | CB4B LLC | |

| Parcel Info | | | | | |
|---|---|---|---|---|---|
| **Property Type** | **Tax Dist.** | **Block** | **Lot** | **Qualifier** | **Municipality** |
| | | | | | |

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Recording Requested By:
MERIDIAN ASSET SERVICES

When Recorded Mail To:
MERIDIAN ASSET SERVICES
3201 34TH ST S
STE. 310
ST. PETERSBURG, FL, 33711

## CORPORATE ASSIGNMENT OF MORTGAGE

NJ/BURLINGTON - Additional ID #'s:

Assignment Prepared on: October 24, 2018

**Assignor: BAYVIEW LOAN SERVICING, LLC**, at 4425 PONCE DE LEON BLVD., SUITE # 500, CORAL GABLES, FL, 33146

**Assignee : CB4B, LLC**, at 4425 PONCE DE LEON BLVD, SUITE#500, CORAL GABLES, FL, 33146

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated: 11/29/2007, in the amount of $56,003.20, executed by FRANK H MCINTYRE SR to CITIFINANCIAL SERVICES, INC.. Recorded: 12/4/2007, Instrument #: 4508311, Book: 11646, Page: 973 in BURLINGTON County, State of New Jersey.

The property is located in the Township of PEMBERTON.
Property Address: 312 CHEROKEE DRIVE, BROWNS MILLS, NJ, 08015

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

BAYVIEW LOAN SERVICING, LLC

On: OCT 3 1 2018

By: _____

Name: ESLOAN SOTOLONGO
Title: ASSISTANT VICE PRESIDENT

State of FLORIDA
County of MIAMI-DADE

On OCT 3 1 2018 , before me, Sarah Whiteley, a Notary Public in and for MIAMI-DADE in the State of FLORIDA, personally appeared ESLOAN SOTOLONGO, ASSISTANT VICE PRESIDENT, BAYVIEW LOAN SERVICING, LLC, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_____
Sarah Whiteley

Notary Expires: 8/7/2021 / #: GG 132615

NJ/BURLINGTON

> SARAH WHITELEY
> MY COMMISSION # GG 132615
> EXPIRES: August 7, 2021
> Bonded Thru Notary Public Underwriters

Unofficial Document

| RECORDING INFORMATION SHEET | 50 RANCOCAS RD, MT. HOLLY, NJ 08060 |
|---|---|

| INSTRUMENT NUMBER: **5432434** | DOCUMENT TYPE: **ASSIGNMENT OF MORTGAGE** |
|---|---|

| | |
|---|---|
| **Document Charge Type** | ASSIGNMENT OF MORTGAGE |

**Return Address** *(for recorded documents)*
LLC SIMPLIFILE
4844 NORTH 300 WEST
PROVO   UT   84604

Unofficial Document

**Official Use Only**

JOANNE SCHWARTZ
BURLINGTON COUNTY

RECEIPT NUMBER
8545578
RECORDED ON
January   04, 2019 11:25 AM

INSTRUMENT NUMBER
5432434

BOOK: OR13369
PAGE:  8252

| | |
|---|---|
| **No. Of Pages** *(Excluding Recording Information and/or Summary Sheet)* | 1 |
| **Consideration Amount** | $0.00 |
| **Recording Fee** | $40.00 |
| **Realty Transfer Fee** | $0.00 |
| **Total Amount Paid** | $40.00 |
| **Municipality** | PEMBERTON TWP |
| **Parcel Information** | **Block:**  N/A<br>**Lot:**  N/A |
| **First Party Name** | CB4B |
| **Second Party Name** | CITIBANK |

**Additional Information (Official Use Only)**

Ctrl Id: 5693663 Recording Clerk: nsmith

*************************** *DO NOT REMOVE THIS PAGE.* ***************************
*COVER SHEET (DOCUMENT SUMMARY FORM) IS PART OF BURLINGTON COUNTY FILING RECORD*
***************** *RETAIN THIS PAGE FOR FUTURE REFERENCE.* *****************



# Burlington County Document Summary Sheet

BURLINGTON COUNTY CLERK

50 RANCOCAS RD

MOUNT HOLLY NJ 08060 1317

| **Transaction Identification Number** | 3684239 | 3194446 |
|---|---|---|

**Recorded Document to be Returned by Submitter to:**

MERIDIAN ASSET SERVICES - API

3201 34TH ST S STE 310

ST PETERSBURG, FL 33711

| **Official Use Only** | | |
|---|---|---|
| **Submission Date** *(mm/dd/yyyy)* | | 12/28/2018 |
| **No. of Pages** *(excluding Summary Sheet)* | | 1 |
| **Recording Fee** *(excluding transfer tax)* | | $40.00 |
| **Realty Transfer Tax** | | $0.00 |
| **Total Amount** | | $40.00 |
| **Document Type** | ASSIGNMENT OF MORTGAGE | |
| **Electronic Recordation Level** | L2 - Level 2 (With Images) | |
| **Municipal Codes** | | |
| | BURLINGTON COUNTY | 99 |

**Additional Information (Official Use Only)**

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

**Book # 13369 Page # 8252 Inst. # 5432434**



# Burlington County Document Summary Sheet

| | | |
|---|---|---|
| **Type** | ASSIGNMENT OF MORTGAGE | |
| **Consideration** | | |
| **Submitted By** | SIMPLIFILE, LLC. (SIMPLIFILE) | |
| **Document Date** | 11/13/2018 | |
| **Reference Info** | | |

**ASSIGNMENT OF MORTGAGE**

| Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
|---|---|---|---|---|
| | 11656 | 973 | 4508311 | |

| ASSIGNOR | Name | Address |
|---|---|---|
| | CB4B LLC | |

| ASSIGNEE | Name | Address |
|---|---|---|
| | CITIBANK NA<br>CMLTI ASSET TRUST | |

**Parcel Info**

| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
|---|---|---|---|---|---|
| | | | | | |

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Unofficial Document

Recording Requested By:
MERIDIAN ASSET SERVICES

When Recorded Mail To:
MERIDIAN ASSET SERVICES
3201 34TH ST S
STE. 310
ST. PETERSBURG, FL, 33711

## CORPORATE ASSIGNMENT OF MORTGAGE

NJ/BURLINGTON - Additional ID #'s: New Loan:

Assignment Prepared on: November 12, 2018

**Assignor:** CB4B, LLC, at 4425 PONCE DE LEON BLVD., SUITE#500, CORAL GABLES, FL, 33146

**Assignee :** CITIBANK, N.A., AS TRUSTEE FOR CMLTI ASSET TRUST, at 388 GREENWICH ST., 14TH FLOOR, NEW YORK, NY, 10013

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated: 11/29/2007, in the amount of $56,003.20, executed by FRANK H MCINTYRE SR to CITIFINANCIAL SERVICES, INC.. Recorded: 12/4/2007, Instrument #: 4508311, Book: 11646, Page: 973 in BURLINGTON County, State of New Jersey.

The property is located in the Township of PEMBERTON.
Property Address: 312 CHEROKEE DRIVE, BROWNS MILLS, NJ, 08015

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

CB4B, LLC

On: November 13, 2018

By: _____
Name: ESLOAN SOTOLONGO
Title: ASSISTANT VICE PRESIDENT

State of FLORIDA
County of MIAMI-DADE

On November 13, 2018, before me, Sarah Whiteley, a Notary Public in and for MIAMI-DADE in the State of FLORIDA, personally appeared ESLOAN SOTOLONGO, ASSISTANT VICE PRESIDENT, CB4B, LLC, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_____
Sarah Whiteley

Notary Expires: 8/7/2021 / #: GG 132615

```
SARAH WHITELEY
MY COMMISSION # GG 132615
EXPIRES: August 7, 2021
Bonded Thru Notary Public Underwriters
```

**NJ/BURLINGTON**

EXHIBIT D

# RECORDING DATA PAGE

REGIONAL TITLE AGENCY
PO BOX 557
CHERRY HILL, NJ 08003

Receipt No    : 549466
Document No   : 4138824   Type : MTG
Recording Date : 03/24/2005
Login id      : ccbozart

    Recorded
 Mar 24 2005 01:34pm
Burlington County Clerk

Unofficial Document

**Clerk of Burlington County • 49 Rancocas Rd. • Mt. Holly, NJ 08060**
**609-265-5180**

MB 10273 PG 462

Return To:

AURORA FINANCIAL GROUP INC
9 EVES DRIVE SUITE 190
MARLTON, NJ    08053
856-596-6200

Prepared By: *Marie Nocito*

MARIE NOCITO
9 EVES DRIVE SUITE 190
MARLTON, NJ    08053
856-596-6200

R & R

Regional Title Agency, LLC
PO Box 557
Cherry Hill, NJ  08003

Record 1st

⑯

Unofficial Document

BURLINGTON COUNTY CLERK.

2005 MAR 23 A ⊄ 38

ARRIVED

———————————— |Space Above This Line For Recording Data| ————————————

# MORTGAGE

MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated    MARCH 16TH, 2005                    ,
together with all Riders to this document.
**(B) "Borrower"** is   FRANK H. MCINTYRE SR. SR., A MARRIED MAN

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee
under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**NEW JERSEY** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**         Form 3031 1/01

(VMP) -6A(NJ) (0005)

Page 1 of 15                        Initials: *FMc*

VMP MORTGAGE FORMS · (800)521-7291

MB10273PG446

NJCM1M

**(D) "Lender"** is  AURORA FINANCIAL GROUP, INC.

Lender is a  MORTGAGE BANKER
organized and existing under the laws of   THE STATE OF NEW JERSEY
Lender's address is 9 EVES DR. SUITE 190,, MARLTON, NJ 08053

**(E) "Note"** means the promissory note signed by Borrower and dated   MARCH 16TH, 2005
The Note states that Borrower owes Lender  ONE HUNDRED THIRTY NINE THOUSAND AND
NO/100.                                                                          Dollars
(U.S. $    139,000.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than   APRIL 1ST, 2035
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] LEGAL DESCRIPTION |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

Initials: _____

-6A(NJ) (0005)                                    Page 2 of 15                                    Form 3031 1/01

NJCM2M

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the
                    COUNTY                              of                    BURLINGTON                    :
          [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

BLOCK 660
LOT 1



( SEE ATTACHED LEGAL DESCRIPTION )



Property Account Number:                                                   which currently has the address of
                              312 CHEROKEE DRIVE                                                   [Street]
          PEMBERTON TWO                    [City], New Jersey          08015          [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Initials: _Jmc_

VMP -6A(NJ) (0005)          Page 3 of 15          Form 3031 1/01

# LAWYERS TITLE INSURANCE CORPORATION

TITLE INSURANCE COMMITMENT

## SCHEDULE A
## LEGAL DESCRIPTION

**All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the** Township of Pemberton, County of Burlington State of New Jersey:

BEGINNING at the intersection of the Southwesterly side line of Cherokee Drive, (50' wide - formerly Park Drive), with the Southeasterly side line of Oriole Road, (50' wide), and from said BEGINNING, runs, THENCE:

(1) Along Cherokee Drive, curving to the left with a radius of 520 feet an arc distance of 170.12 feet to a corner of same with the Northwesterly side line of Bluejay Road (50 feet wide) and from said point runs; thence

(2) Along Bluejay South 03 degrees 43 minutes 00 seconds West a distance of 111.19 feet to a point in the same and corner to Lot 3, Block 660 and from said point runs; thence

(3) Along Lot 3, North 86 degrees 17 minutes 00 seconds West a distance of 110.57 feet to a corner of same and corner to Lot 7, Block 660, and from said point runs; thence

(4) Along Lot 7, North 64 degrees 00 minutes 00 seconds West a distance of 106.57 feet to a point in the aforementioned side line of Oriole Road and from said point runs; thence

(5) Along Oriole Road, North 26 degrees 00 minutes 00 seconds East a distance of 114.95 feet to the point and place of BEGINNING.

**NOTE: Being Lot(s)** 1, 2, **Block** 660, **Tax Map of the** Township **of** Pemberton, **County of** Burlington.

**NOTE : Lot and Block shown for informational purposes only.**

Issued by:
**Regional Title Agency, LLC**
9000 Commerce Parkway
Suite A-1
Mt Laurel, NJ 08054
Telephone: (856) 787-9005
Fax:(856) 787-1372

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

Initials: _____

MB 10273 PG 450

NJCM4M

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

 -6A(NJ) (0005)                    Page 6 of 15          Initials: _____          Form 3031 1/01

NJCM6M

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable



attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials: _____

NJCM9M

MB I 0 2 7 3 PG 4 5 5

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: ___

MB I 0273 PG 456

NJCMAM

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the

Initials: _cJMc_

-6A(NJ) (0005)       Page 11 of 15      Form 3031 1/01

NJCMBM

new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at Section 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.



Unofficial Document

MB 1 0 2 7 3 PG 4 5 9

NJCMDM

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_Maria Wright_      _Frank H. McIntyre Sr._ (Seal)

FRANK H. MCINTYRE SR. SR.     -Borrower

_____     _____ (Seal)
    -Borrower

_____ (Seal)     _____ (Seal)
    -Borrower             -Borrower

_____ (Seal)     _____ (Seal)
    -Borrower             -Borrower

_____ (Seal)     _____ (Seal)
    -Borrower             -Borrower

Unofficial Document

MB10273PG460

NJCMEM

**STATE OF NEW JERSEY,**　　　　　　　　BURLINGTON　　　　　　　　**County ss:**

On this　　　16TH　　　day of　　　MARCH 2005　　　　　　　, before me, the subscriber,
personally appeared FRANK H. MCINTYRE SR. SR.

who, I am satisfied,
is/are the person(s) named in and who executed the within instrument, and thereupon acknowledged that
he/she/they signed, sealed and delivered the same as his/her/their act and deed, for the purposes therein
expressed.

_____
Notary Public

Unofficial Document

MARCIA MINOTT
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES
JUNE 18, 2008

NJCMFM　　　　　　　HB 10273 PG 461

EXHIBIT E

# RECORDING DATA PAGE

CITIFINANCIAL
516 HIGH STREET STE 5
MT HOLLY, NJ 08060

Receipt No    : 598739
Document No   : 4246718  Type : MTG
Recording Date : 12/07/2005
Login id      : ccstockt

Recorded
Dec 07 2005 11:17am
Burlington County Clerk

Unofficial Document

**Clerk of Burlington County • 49 Rancocas Rd. • Mt. Holly, NJ 08060**
**609-265-5180**

DISCHARGED BY CERTIFICATE
BOOK # 1152 PAGE # 246
DATE: MAY 19 2006
RECORDED BY: JUDI MILLER
PHILIP E. HAINES, CLERK

Mortgagor

FRANK H MCINTYRE SR
312 CHEROKEE DRIVE
BROWNS MILLS NJ 08015

Mortgagee/Lender
CitiFinancial Services, Inc.
(a Pennsylvania corporation)
516 HIGH STREET STE 5
MT HOLLY NJ 08060
After recording, return to:
CITIFINANCIAL SERVICES,
INC.
516 HIGH STREET STE 5
MT HOLLY NJ 08060

N.R.E.I.S. of N.J., Inc.
401 Route 70 East
Suite 210
Cherry Hill, N.J. 08034

**WORDS USED OFTEN IN THIS DOCUMENT:**

A. "Mortgage": This document, which is dated  11/21/2005 , will be called the "Mortgage".

B. "Borrower": FRANK H MCINTYRE SR                                                                           will be called
   "Borrower". Borrower may be more than one person.

C. "Mortgagor": FRANK H MCINTYRE

                                                                                       will sometimes be called
   "Mortgagor" and sometimes be called "I". This Mortgagor includes all persons owning an interest in the Property and may
   not be the same person as Borrower.

D. "Lender": CitiFinancial Services, Inc., a Pennsylvania corporation. Lender's address is
    516 HIGH STREET STE 5   MT HOLLY NJ 08060                          Lender is also known as Mortgagee.

E. "Note": The Promissory Note signed by Borrower and dated the same date as this Mortgage will be called the "Note".
   The Note shows that Borrower owes Lender

   Dollars ($  31,556.83 ) plus interest which Borrower has promised to pay in monthly payments of principal and interest,
   and to pay in full by  12/10/2025 .

F. "Property": The Property that is described below in the section entitled "Description of Property" will be called "Property".

**DESCRIPTION OF THE PROPERTY**

I give, grant, convey and mortgage to Lender the rights in the property described in (A) through (G) below:

(A) The Property which is located at 312 CHEROKEE DRIVE                        ,   BROWNS MILLS                ,
                   ,  BURLINGTON   ,  NJ   08015            . It has the following legal description:

          ALL THAT CERTAIN PROPERTY SITUATED IN THE TOWNSHIP OF PEMBERTON IN THE
          COUNTY OF BURLINGTON AND STATE OF NEW JERSEY BEING DESCRIBED AS FOLLOW
          S: LOT NUMBER 1,2 BLOCK 660 AND BEING MORE FULLY DESCRIBED IN A DEED
          DATED 3/15/2005 AND RECORDED 3/23/2005 AMONG THE LAND RECORDS OF THE
          COUNTY AND STATE SET FORTH ABOVE IN DEED VOLUME 6262 AND PAGE 172.
          ADDRESS: 312 CHEROKEE DRIVE BROWNS MILLS NJ 08015
          TAX MPA OR PARCEL ID NO.: LOT 1,2 BLOCK 660.

(B) All buildings and other improvements that are located on the property described in paragraph (A) of this Section.
(C) All rights in other property that I have as owner of the property described in paragraph (A) of this Section. These rights are
known as easements, rights, appurtenances attached to the property, hereditaments, and tenements.
(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the property described in
paragraph (A) of this Section.
(E) All fixtures that are now or in the future will be on the property described in paragraphs (A) and (B) of this Section, and all
replacements of and additions to those fixtures. Usually, fixtures are items that are physically attached to buildings, such as hot
water heaters, and built-in appliances.
(F) All proceeds, to the extent necessary to repay the amount I owe Lender, which come from the taking of all or any part of
the property by a government agency, or by anyone else authorized by law.
(G) All of the rights and property described in paragraphs (A) through (F) of this Section that I acquire in the future.

**EXPLANATION OF DIFFERENCE BETWEEN BORROWER AND MORTGAGOR:**

In this Mortgage, in some instances, Mortgagor may include one or more persons who may not be the Borrower. In that case,
then only the Borrower is liable for the payment of the Note. In any event, Mortgagor is bound by all other agreements and
promises contained in this Mortgage and also the right of Lender to foreclose on and sell the Property in the event Borrower does
not keep his promise to pay the Note.

**MORTGAGOR'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY:**

I mortgage the Property to Lender, subject to the terms of this Mortgage. This means that, by signing this Mortgage, I am giving Lender those rights that are stated in this Mortgage, and also those rights that the law gives to Lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if:

(A) Borrower fails to pay all the amounts that Borrower owes to Lender as stated in the Note.

(B) I fail to pay, with interest, any amounts that Lender spends under this Mortgage, to protect the value of the Property and Lender's rights in the Property.

(C) I fail to keep any or all of my other promises and agreements under this Mortgage.

**MORTGAGOR'S RIGHT TO MORTGAGE THE PROPERTY AND MORTGAGOR'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY:**

I promise, except for the exception listed in this paragraph, that:

(A) I lawfully own the Property;

(B) I have the right to mortgage the Property to Lender;

(C) There are no outstanding claims or charges against the Property, except for a Mortgage dated __03/16/2005__ , from

__FRANK H MCINTYRE SR__ to

__SELECT PORTFOLI__ , which is filed and recorded in the __BURLINGTON__
(First Mortgage)

County Clerk/Register's Office, in Mortgage Book __10273__ , at Page __446__

I give general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claim of such rights.

**BORROWER'S PROMISE TO PAY:**

Borrower promises to promptly pay to Lender, when due, the principal and interest under the Note.

**MORTGAGOR'S OBLIGATION TO PAY CHARGES AND ASSESSMENTS AND TO SATISFY CLAIMS AGAINST THE PROPERTY:**

I will pay all taxes, assessments and any other charges that may be imposed on the Property, and pay the other mortgage mentioned above, when they become due.

**MORTGAGOR'S OBLIGATION TO OBTAIN AND TO KEEP HAZARD INSURANCE ON THE PROPERTY:**

I will obtain hazard insurance to cover all buildings and other improvements that now or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, and hazards normally covered by "extended coverage" hazard insurance policies. The insurance must be in the amounts and for the periods of time to protect the Lender. Any insurance policy and renewals of the policy must include what is known as a "standard mortgage clause" to protect Lender. I will pay the premiums on the insurance policy when the premium payments are due. If I do not pay the premium payments when they are due, the Lender may pay the insurance premium and add the amount of the premium paid, plus interest, to the amount owed on the Note.

**MORTGAGOR'S OBLIGATION TO MAINTAIN THE PROPERTY:**

I will keep the Property in good repair. I will not destroy, damage or substantially change the Property, and I will not allow the Property to deteriorate.

I will not allow any "Hazardous Substances" to be used, kept or released on the Property.  I will not do anything or allow anyone else to do anything affecting the Property which violates any "Environmental Law."  These two sentences are not intended to keep me from using and storing on the Property small quantities of Hazardous Substances that would be normal for residential use and to maintain the Property.

I will promptly notify you in writing if I become aware of any investigation, litigation, claim or other action involving the Property, whether started by a government agency or by a private person.  I will take whatever action is necessary to rid the Property of any Hazardous Substances as required by Environmental Law.

"Hazardous Substances" are things which are considered toxic or hazardous under Environmental Law and include these things: gasoline, kerosene, petroleum products that can catch fire or are toxic, toxic pesticides and herbicides, solvents that can explode, items containing asbestos or formaldehyde, and radioactive materials.  Environmental Law means federal and state laws relating to health, safety or environmental protection.

**LENDER'S RIGHT TO INSPECT THE PROPERTY:**

Lender has the right to enter and inspect the property on reasonable notice and at any reasonable time.

**MORTGAGOR'S PROMISE NOT TO SELL OR TRANSFER THE PROPERTY:**

I promise that the Property (or any interest in the Property) will not be sold or transferred without Lender's prior written consent. However, I understand that Lender's consent is not needed for a transfer under the following circumstances:

(A) A lien subordinate to the lien of this Mortgage is created;

(B) A lien is created as a result of my purchase of household appliances;

(C) Upon my death, the Property is transferred to my relatives or heirs;

(D) The Property is leased for three years or less under a lease that does not give the tenant the right to purchase the Property;

(E) I transfer the Property to my spouse or children;

(F) The property is transferred to my spouse in connection with an agreement or court decree concerning our divorce, legal separation, or property settlement;

(G) The Property is transferred to a trust of which I am a beneficiary, provided that I still have the right to occupy the Property; and

(H) Any other transfer described in regulations published by the Office of Thrift Supervision.

MB10684P6463

## LENDER'S RIGHT TO TRANSFER THIS MORTGAGE:

Lender may transfer or assign or sell this Mortgage to anyone without notifying Mortgagor in advance. If Lender does transfer or assign or sell this Mortgage to anyone then the transferee (that is the person, firm, or corporation that buys this Mortgage) gets all rights that Lender has.

## NOTICE:

Lender may give any written notices regarding the note and this mortgage to Mortgagor by personal delivery or by ordinary mail at the address of the property.

## LENDER'S RIGHTS IF MORTGAGOR FAILS TO KEEP PROMISES AND AGREEMENTS (FORECLOSURE AND SALE):

If I fail to keep any promise or agreement made in this Mortgage or in the Note, including the promise to pay when due the amounts that Borrower owes to Lender under the Note and under this Mortgage, then Lender may require immediate payment in full of the entire amount then remaining unpaid under the Note and under this Mortgage.

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property, and to have the Property sold. At this sale Lender, or another person, may acquire the property. This is known as "foreclosure and Sale". In any lawsuit for foreclosure and sale, Lender will have the right to collect all the costs allowed by law.

## ENFORCEMENT OF LENDER'S RIGHTS:

If Lender does not exercise or enforce any of Lender's rights under this Mortgage. Note, or under the law, Lender will still have all those rights and Lender may exercise and enforce them in the future. Each of Lender's rights under the Note and this Mortgage is separate. Lender may exercise and enforce one or more of those rights as well as any of Lender's rights under the law one at a time or all at once.

## LENDER'S OBLIGATION TO DISCHARGE THIS MORTGAGE WHEN THE NOTE AND THIS MORTGAGE ARE PAID IN FULL:

When Lender has been paid all amounts due under the Note and under this Mortgage, Lender will discharge this Mortgage by delivering a certificate stating that this Mortgage has been satisfied and after that date this Mortgage will be void.

By signing this Mortgage I agree to all of the above.

Witness _____  
PAUL A. COOPER

Mortgagor _____  
FRANK H. MCINTYRE SR

Mortgagor _____

### Acknowledgement

State of New Jersey  
_____ County } ss

On this _21_ day of _November_, _2005_, before me personally came and appeared _FRANK H. MCINTYRE_ _____ to me known to be, and who I am satisfied, are the makers of and the persons described in and who executed the foregoing instrument and to having made known to them the contents of this document, they did duly acknowledge to me that they executed, and signed, sealed and delivered the same as their voluntary act and deed and purposes therein expressed.

Prepared by: _____  
PAUL A. COOPER

_____  
Notary Public

```
REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST
```

Lender requests the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, with a copy to P. O. Box 17170, Baltimore, MD 21203, of any default under the superior encumbrance and of any sale or other foreclosure action.

Sworn to and subscribed  
before me this  
_21_ day of _NOV_ _2005_

MELISSA FERRARA  
NOTARY PUBLIC OF NEW JERSEY  
Commission Expires _1-21-08_

MB 1084PG464

Unofficial Document

EXHIBIT F

# RECORDING DATA PAGE

Consideration :
Code :
Transfer Fee :
Recording Date: 04/27/2006
Document No : 4300833      cchicks

CITIFINANCIAL
1404 RT 130 N
CINNAMINSON, NJ   08077


Receipt No    : 628648
Document No   : 4300833
Document Type : MTG
Recording Date: 04/27/2006
Login Id      : cchicks

        Recorded
  Apr 27 2006 03:14pm
Burlington County Clerk

Unofficial Document

**Clerk of Burlington County • 49 Rancocas Rd. • Mt. Holly, NJ 08060**
**609-265-5180**

MB 10890 PG 153

# MORTGAGE

Mortgagor

FRANK H MCINTYRE SR
312 CHEROKEE DRIVE
BROWNS MILLS NJ 08015

N.R.E.I.S. of N.J., Inc.
401 Route 70 East
Suite 210
Cherry Hill, N.J. 08034

Mortgagee/Lender
CitiFinancial Services, Inc.
(a Pennsylvania corporation)
516 HIGH STREET STE 5
MT HOLLY NJ 08060

After recording, return to:
CITIFINANCIAL SERVICES,
INC.
516 HIGH STREET STE 5
MT HOLLY NJ 08060

DISCHARGED BY CERTIFICATE
BOOK # 1273 PAGE # 183
DATE: February 16, 2007
RECORDED BY: M.SAUCIER
PHILIP E. HAINES, CLERK

BURLINGTON COUNTY CLERK
ARRIVED 2006 APR 18 A 9 24

## WORDS USED OFTEN IN THIS DOCUMENT:

A. "Mortgage": This document, which is dated 04/13/2006 , will be called the "Mortgage".

B. "Borrower": FRANK H MCINTYRE SR                                                will be called
   "Borrower". Borrower may be more than one person.

C. "Mortgagor": FRANK H MCINTYRE                                        will sometimes be called
   "Mortgagor" and sometimes be called "I". This Mortgagor includes all persons owning an interest in the Property and may not be the same person as Borrower.

D. "Lender": CitiFinancial Services, Inc., a Pennsylvania corporation. Lender's address is
   516 HIGH STREET STE 5    MT HOLLY NJ 08060               Lender is also known as Mortgagee.

E. "Note": The Promissory Note signed by Borrower and dated the same date as this Mortgage will be called the "Note".
   The Note shows that Borrower owes Lender
   FORTY THOUSAND SIX HUNDRED THIRTY AND 13/100 DOLLARS
   Dollars ($ 40,630.13 ) plus interest which Borrower has promised to pay in monthly payments of principal and interest, and to pay in full by 04/18/2026 .

F. "Property": The Property that is described below in the section entitled "Description of Property" will be called "Property".

## DESCRIPTION OF THE PROPERTY

I give, grant, convey and mortgage to Lender the rights in the property described in (A) through (G) below:

(A) The Property which is located at 312 CHEROKEE DRIVE                    , BROWNS MILLS                    ,
    BURLINGTON   , NJ 08015               . It has the following legal description:

ALL THAT CERTAIN PROPERTY SITUTED IN THE TOWNSHIP OF PEMBERTON IN THE
COUNTY OF BURLINGTON AND STATE OF NEW JERSEY BEING DESCRIBED AS FOLLOW
S: LOT NUMBER 1,2 BLOCK 660 AND BEING MORE FULLY DESCRIBED IN A DEED D
ATED 3/15/2005 AND RECORDED 3/23/2005 AMONG THE LAND RECORDS OF THE C
OUNTY AND STATE SET FORTH ABOVE IN DEED VOLUME 6262 AND PAGE 172.

ADDRESS: 312 CHEROKEE DRIVE BROWNS MILLS NJ 08015
TAX MAP OR PARCEL ID NO.: LOT 1,2 BLOCK 660

(B) All buildings and other improvements that are located on the property described in paragraph (A) of this Section.

(C) All rights in other property that I have as owner of the property described in paragraph (A) of this Section. These rights are known as easements, rights, appurtenances attached to the property, hereditaments, and tenements.

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the property described in paragraph (A) of this Section.

(E) All fixtures that are now or in the future will be on the property described in paragraphs (A) and (B) of this Section, and all replacements of and additions to those fixtures. Usually, fixtures are items that are physically attached to buildings, such as hot water heaters, and built-in appliances.

(F) All proceeds, to the extent necessary to repay the amount I owe Lender, which come from the taking of all or any part of the property by a government agency, or by anyone else authorized by law.

(G) All of the rights and property described in paragraphs (A) through (F) of this Section that I acquire in the future.

## EXPLANATION OF DIFFERENCE BETWEEN BORROWER AND MORTGAGOR:

In this Mortgage, in some instances, Mortgagor may include one or more persons who may not be the Borrower. In that case, then only the Borrower is liable for the payment of the Note. In any event, Mortgagor is bound by all other agreements and promises contained in this Mortgage and also the right of Lender to foreclose and sell the Property in the event Borrower does not keep his promise to pay the Note.

MB10890PG150

Unofficial Document

**MORTGAGOR'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY:**

I mortgage the Property to Lender, subject to the terms of this Mortgage. This means that, by signing this Mortgage, I am giving Lender those rights that are stated in this Mortgage, and also those rights that the law gives to Lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if:

(A) Borrower fails to pay all the amounts that Borrower owes to Lender as stated in the Note.

(B) I fail to pay, with interest, any amounts that Lender spends under this Mortgage, to protect the value of the Property and Lender's rights in the Property.

(C) I fail to keep any or all of my other promises and agreements under this Mortgage.

**MORTGAGOR'S RIGHT TO MORTGAGE THE PROPERTY AND MORTGAGOR'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY:**

I promise, except for the exception listed in this paragraph, that:

(A) I lawfully own the Property;

(B) I have the right to mortgage the Property to Lender;

(C) There are no outstanding claims or charges against the Property, except for a Mortgage dated __03/24/2005__ , from

__FRANK H MCINTYRE SR__ to

__ASC__ , which is filed and recorded in the __BURLINGTON__
                     (First Mortgagee)
County Clerk/Register's Office, in Mortgage Book __10273__ , at Page __446__

I give general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claim of such rights.

**BORROWER'S PROMISE TO PAY:**

Borrower promises to promptly pay to Lender, when due, the principal and interest under the Note.

**MORTGAGOR'S OBLIGATION TO PAY CHARGES AND ASSESSMENTS AND TO SATISFY CLAIMS AGAINST THE PROPERTY:**

I will pay all taxes, assessments and any other charges that may be imposed on the Property, and pay the other mortgage mentioned above, when they become due.

**MORTGAGOR'S OBLIGATION TO OBTAIN AND TO KEEP HAZARD INSURANCE ON THE PROPERTY:**

I will obtain hazard insurance to cover all buildings and other improvements that now or in the future will be located on the Property. The Insurance must cover loss or damage caused by fire, and hazards normally covered by "extended coverage" hazard insurance policies. The insurance must be in the amounts and for the periods of time to protect the Lender. Any insurance policy and renewals of the policy must include what is known as a "standard mortgage clause" to protect Lender. I will pay the premiums on the insurance policy when the premium payments are due. If I do not pay the premium payments when they are due, the Lender may pay the insurance premium and add the amount of the premium paid, plus interest, to the amount owed on the Note.

**MORTGAGOR'S OBLIGATION TO MAINTAIN THE PROPERTY:**

I will keep the Property in good repair. I will not destroy, damage or substantially change the Property, and I will not allow the Property to deteriorate.

I will not allow any "Hazardous Substances" to be used, kept or released on the Property. I will not do anything or allow anyone else to do anything affecting the Property which violates any "Environmental Law." These two sentences are not intended to keep me from using and storing on the Property small quantities of Hazardous Substances that would be normal for residential use and to maintain the Property.

I will promptly notify you in writing if I become aware of any investigation, litigation, claim or other action involving the Property, whether started by a government agency or by a private person. I will take whatever action is necessary to rid the Property of any Hazardous Substances as required by Environmental Law.

"Hazardous Substances" are things which are considered toxic or hazardous under Environmental Law and include these things: gasoline, kerosene, petroleum products that can catch fire or are toxic, toxic pesticides and herbicides, solvents that can explode, items containing asbestos or formaldehyde, and radioactive materials. Environmental Law means federal and state laws relating to health, safety or environmental protection.

**LENDER'S RIGHT TO INSPECT THE PROPERTY:**

Lender has the right to enter and inspect the property on reasonable notice and at any reasonable time.

**MORTGAGOR'S PROMISE NOT TO SELL OR TRANSFER THE PROPERTY:**

I promise that the Property (or any interest in the Property) will not be sold or transferred without Lender's prior written consent. However, I understand that Lender's consent is not needed for a transfer under the following circumstances:

(A) A lien subordinate to the lien of this Mortgage is created;

(B) A lien is created as a result of my purchase of household appliances;

(C) Upon my death, the Property is transferred to my relatives or heirs;

(D) The Property is leased for three years or less under a lease that does not give the tenant the right to purchase the Property;

(E) I transfer the Property to my spouse or children;

(F) The property is transferred to my spouse in connection with an agreement or court decree concerning our divorce, legal separation, or property settlement;

(G) The Property is transferred to a trust of which I am a beneficiary, provided that I still have the right to occupy the Property; and

(H) Any other transfer described in regulations published by the Office of Thrift Supervision.

MB **10890** PG **151**

**LENDER'S RIGHT TO TRANSFER THIS MORTGAGE:**

Lender may transfer or assign or sell this Mortgage to anyone without notifying Mortgagor in advance. If Lender does transfer or assign or sell this Mortgage to anyone then the transferee (that is the person, firm, or corporation that buys this Mortgage) gets all rights that Lender has.

**NOTICE:**

Lender may give any written notices regarding the note and this mortgage to Mortgagor by personal delivery or by ordinary mail at the address of the property.

**LENDER'S RIGHTS IF MORTGAGOR FAILS TO KEEP PROMISES AND AGREEMENTS (FORECLOSURE AND SALE):**

If I fail to keep any promise or agreement made in this Mortgage or in the Note, including the promise to pay when due the amounts that Borrower owes to Lender under the Note and under this Mortgage, then Lender may require immediate payment in full of the entire amount then remaining unpaid under the Note and under this Mortgage.

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property, and to have the Property sold. At this sale Lender, or another person, may acquire the property. This is known as "foreclosure and Sale". In any lawsuit for foreclosure and sale, Lender will have the right to collect all the costs allowed by law.

**ENFORCEMENT OF LENDER'S RIGHTS:**

If Lender does not exercise or enforce any of Lender's rights under this Mortgage. Note, or under the law, Lender will still have all those rights and Lender may exercise and enforce them in the future. Each of Lender's rights under the Note and this Mortgage is separate. Lender may exercise and enforce one or more of those rights as well as any of Lender's rights under the law one at a time or all at once.

**LENDER'S OBLIGATION TO DISCHARGE THIS MORTGAGE WHEN THE NOTE AND THIS MORTGAGE ARE PAID IN FULL:**

When Lender has been paid all amounts due under the Note and under this Mortgage, Lender will discharge this Mortgage by delivering a certificate stating that this Mortgage has been satisfied and after that date this Mortgage will be void.

By signing this Mortgage I agree to all of the above.

Witness _____

_____ PAUL A COOPER _____

Mortgagor _____
FRANK H. MCINTYRE

Mortgagor _____

**Acknowledgement**

State of New Jersey

_____ County } ss

On this _____ 13 _____ day of _____ April _____, 2006, before me personally came and appeared FRANK H MCINTYRE _____ to me known to be, and who I am satisfied, are the makers of and the persons described in and who executed the foregoing instrument and to having made known to them the contents of this document, they did duly acknowledge to me that they executed, and signed, sealed and delivered the same as their voluntary act and deed and purposes therein expressed.

Prepared by: _____

_____ PAUL A COOPER _____

_____ Megan McDonagh _____
Notary Public

---
**REQUEST FOR NOTICE OF DEFAULT**
**AND FORECLOSURE UNDER SUPERIOR**
**MORTGAGES OR DEEDS OF TRUST**
---

Lender requests the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, with a copy to P. O. Box 17170, Baltimore, MD 21203, of any default under the superior encumbrance and of any sale or other foreclosure action.

**MEGAN McDONAGH**
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 1-21-08

Sworn to and subscribed
before me this
13 day of April, 2006

MB 10890 PG 152

EXHIBIT G

 **Burlington County Document Summary Sheet**

| | Transaction Identification Number | 1047587 | 94353 |
|---|---|---|---|

BURLINGTON COUNTY CLERK'S OFFICE

49 RANCOCAS RD

MOUNT HOLLY NJ 08060 1317

| **Return Address** *(for recorded documents)* |
|---|
| NATIONAL REAL ESTATE |
| 401 RTE 70 EAST, STE 210 |
| CHERRY HILL NJ 08034 |

| **Official Use Only** |
|---|
| Consideration : |
| Code : |
| Transfer Fee : |
| Recording Date: 01/11/2007 |
| Document No : 4400465      ccbunn |

NATIONAL REAL ESTATE
401 RTE 70 EAST, STE 210
CHERRY HILL, NJ   08034


Receipt No    : 680369
Document No   : 4400465
Document Type : MTG
Recording Date: 01/11/2007
Login Id      : ccbunn

    Recorded
   Jan 11 2007 10:47am
 Burlington County Clerk

| **Submission Date** *(mm/dd/yyyy)* | 01/09/2007 |
|---|---|
| **No. of Pages** *(excluding Summary Sheet)* | 3 |
| **Recording Fee** *(excluding transfer tax)* | $50.00 |
| **Realty Transfer Tax** | $0.00 |
| **Total Amount** | $50.00 |

| **Document Type** | MORTGAGE |
|---|---|

**Electronic Recordation Level**

SS - SummarySheet

**Municipal Codes**

PEMBERTON TWP                    29

**Bar Code(s)**

**Additional Information (Official Use Only)**

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Unofficial Document

 **Burlington County Document Summary Sheet**

| | | | | |
|---|---|---|---|---|
| Type | MORTGAGE | | | |
| Consideration | $44,448.01 | | | |
| Submitted By | NATIONAL REAL ESTATE | | | |
| Document Date | 01/05/2007 | | | |

| Reference Info | Book ID | Book | Beginning Page | Inst No |
|---|---|---|---|---|
| | | | | |

| | Name | Address |
|---|---|---|
| | FRANK SR H MCINTYRE | 312 CHEROKEE DR,BROWNS MILLS,NJ 08015 |

| | Name | Address |
|---|---|---|
| | CITIFINANCIAL SERVICES INC | 516 HIGH ST, STE 5,MT HOLLY,NJ 08060 |

| Parcel Information | Tax Dist. | Block | Lot | Qualifier | Municipality |
|---|---|---|---|---|---|
| | 29 | 660 | 1,2 | | 29 |

MORTGAGE

*DO NOT REMOVE THIS PAGE.*
COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.
RETAIN THIS PAGE FOR FUTURE REFERENCE.

MB 1 1267 PG 209

3  
~ <u>Mortgagor</u>

**Mortgagee/Lender**
CitiFinancial Services, Inc.
(a Pennsylvania corporation)
516 HIGH STREET STE 5
MT HOLLY NJ 08060
After recording, return to:
CITIFINANCIAL SERVICES,
INC.
516 HIGH STREET STE 5
MT HOLLY NJ 08060

FRANK H MCINTYRE SR
312 CHEROKEE DRIVE
BROWNS MILLS NJ 08015

R+R

**N.R.E.I.S. of N.J., Inc.**
401 Route 70 East
Suite 210
Cherry Hill, N.J. 08034

**WORDS USED OFTEN IN THIS DOCUMENT:**

A. "Mortgage": This document, which is dated  01/05/2007 , will be called the "Mortgage".

B. "Borrower": FRANK H MCINTYRE SR                                                    will be called
"Borrower".  Borrower may be more than one person.

C. "Mortgagor": FRANK H. MCINTYRE

"Mortgagor" and sometimes be called "I".  This Mortgagor includes all persons owning an interest in the Property and may not be the same person as Borrower.

D. "Lender": CitiFinancial Services, Inc., a Pennsylvania corporation. Lender's address is
516 HIGH STREET STE 5    MT HOLLY NJ 08060                        Lender is also known as Mortgagee.

E. "Note": The Promissory Note signed by Borrower and dated the same date as this Mortgage will be called the "Note".
The Note shows that Borrower owes Lender
FORTY-FOUR THOUSAND FOUR HUNDRED FORTY-EIGHT AND 01/100 DOLLARS
Dollars ($  44,448.01) plus interest which Borrower has promised to pay in monthly payments of principal and interest, and to pay in full by 01/25/2027 .

F. "Property": The Property that is described below in the section entitled "Description of Property" will be called "Property".

**DESCRIPTION OF THE PROPERTY**

I give, grant, convey and mortgage to Lender the rights in the property described in (A) through (G) below:

(A) The Property which is located at 312 CHEROKEE DRIVE                , BROWNS MILLS                     ,
BURLINGTON  , NJ  08015       It has the following legal description:

ALL THAT CERTAIN PROPERTY SITUATED IN THE TOWNSHIP OF PEMBERTON IN THE
COUNTY OF BURLINGTON AND STATE OF NEW JERSEY, BEING DESCRIBED AS FOLLO
WS: LOT NUMBER(S) 1,2 BLOCK 660, AND BEING MORE FULLY DESCRIBED IN A
DEED DATED 03/15/2005 AND RECORDED 03/23/2005, AMONG THE LAND RECORDS
OF THE COUNTY AND STATE SET FORTH ABOVE, IN DEED VOLUME 6262 AND PAGE
172.

ADDRESS: 312 CHEROKEE DRIVE; BROWNS MILLS, NJ 08015  TAX MAP OR PARCEL
ID NO.: LOT 1,2 BLOCK 660

Unofficial Document

(B) All buildings and other improvements that are located on the property described in paragraph (A) of this Section.

(C) All rights in other property that I have as owner of the property described in paragraph (A) of this Section. These rights are known as easements, rights, appurtenances attached to the property, hereditaments, and tenements.

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the property described in paragraph (A) of this Section.

(E) All fixtures that are now or in the future will be on the property described in paragraphs (A) and (B) of this Section, and all replacements of and additions to those fixtures. Usually, fixtures are items that are physically attached to buildings, such as hot water heaters, and built-in appliances.

(F) All proceeds, to the extent necessary to repay the amount I owe Lender, which come from the taking of all or any part of the property by a government agency, or by anyone else authorized by law.

(G) All of the rights and property described in paragraphs (A) through (F) of this Section that I acquire in the future.

**EXPLANATION OF DIFFERENCE BETWEEN BORROWER AND MORTGAGOR:**

In this Mortgage, in some instances, Mortgagor may include one or more persons who may not be the Borrower. In that case, then only the Borrower is liable for the payment of the Note. In any event, Mortgagor is bound by all other agreements and promises contained in this Mortgage and also the right of Lender to foreclose on and sell the Property in the event Borrower does not keep his promise to pay the Note.

MB 11267PG210

**MORTGAGOR'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY:**

I mortgage the Property to Lender, subject to the terms of this Mortgage. This means that, by signing this Mortgage, I am giving Lender those rights that are stated in this Mortgage, and also those rights that the law gives to Lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if:

(A) Borrower fails to pay all the amounts that Borrower owes to Lender as stated in the Note.

(B) I fail to pay, with interest, any amounts that Lender spends under this Mortgage, to protect the value of the Property and Lender's rights in the Property.

(C) I fail to keep any or all of my other promises and agreements under this Mortgage.

**MORTGAGOR'S RIGHT TO MORTGAGE THE PROPERTY AND MORTGAGOR'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY:**

I promise, except for the exception listed in this paragraph, that:

(A) I lawfully own the Property;

(B) I have the right to mortgage the Property to Lender;

(C) There are no outstanding claims or charges against the Property, except for a Mortgage dated __03/24/2005__ , from

__FRANK H MCINTYRE SR_____ to

__ASC_____ , which is filed and recorded in the __BURLINGTON__
(First Mortgagee)
County Clerk/Register's Office, in Mortgage Book __10273__ , at Page __446__

I give general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claim of such rights.

**BORROWER'S PROMISE TO PAY:**

Borrower promises to promptly pay to Lender, when due, the principal and interest under the Note.

**MORTGAGOR'S OBLIGATION TO PAY CHARGES AND ASSESSMENTS AND TO SATISFY CLAIMS AGAINST THE PROPERTY:**

I will pay all taxes, assessments and any other charges that may be imposed on the Property, and pay the other mortgage mentioned above, when they become due.

**MORTGAGOR'S OBLIGATION TO OBTAIN AND TO KEEP HAZARD INSURANCE ON THE PROPERTY:**

I will obtain hazard insurance to cover all buildings and other improvements that now or in the future will be located on the Property. The Insurance must cover loss or damage caused by fire, and hazards normally covered by "extended coverage" hazard insurance policies. The insurance must be in the amounts and for the periods of time to protect the Lender. Any insurance policy and renewals of the policy must include what is known as a "standard mortgage clause" to protect Lender. I will pay the premiums on the insurance policy when the premium payments are due. If I do not pay the premium payments when they are due, the Lender may pay the insurance premium and add the amount of the premium paid, plus interest, to the amount owed on the Note.

**MORTGAGOR'S OBLIGATION TO MAINTAIN THE PROPERTY:**

I will keep the Property in good repair. I will not destroy, damage or substantially change the Property, and I will not allow the Property to deteriorate.

I will not allow any "Hazardous Substances" to be used, kept or released on the Property. I will not do anything or allow anyone else to do anything affecting the Property which violates any "Environmental Law." These two sentences are not intended to keep me from using and storing on the Property small quantities of Hazardous Substances that would be normal for residential use and to maintain the Property.

I will promptly notify you in writing if I become aware of any investigation, litigation, claim or other action involving the Property, whether started by a government agency or by a private person. I will take whatever action is necessary to rid the Property of any Hazardous Substances as required by Environmental Law.

"Hazardous Substances" are things which are considered toxic or hazardous under Environmental Law and include these things: gasoline, kerosene, petroleum products that can catch fire or are toxic, toxic pesticides and herbicides, solvents that can explode, items containing asbestos or formaldehyde, and radioactive materials. Environmental Law means federal and state laws relating to health, safety or environmental protection.

**LENDER'S RIGHT TO INSPECT THE PROPERTY:**

Lender has the right to enter and inspect the property on reasonable notice and at any reasonable time.

**MORTGAGOR'S PROMISE NOT TO SELL OR TRANSFER THE PROPERTY:**

I promise that the Property (or any interest in the Property) will not be sold or transferred without Lender's prior written consent. However, I understand that Lender's consent is not needed for a transfer under the following circumstances:

(A) A lien subordinate to the lien of this Mortgage is created;

(B) A lien is created as a result of my purchase of household appliances;

(C) Upon my death, the Property is transferred to my relatives or heirs;

(D) The Property is leased for three years or less under a lease that does not give the tenant the right to purchase the Property;

(E) I transfer the Property to my spouse or children;

(F) The property is transferred to my spouse in connection with an agreement or court decree concerning our divorce, legal separation, or property settlement;

(G) The Property is transferred to a trust of which I am a beneficiary, provided that I still have the right to occupy the Property; and

(H) Any other transfer described in regulations published by the Office of Thrift Supervision.

**LENDER'S RIGHT TO TRANSFER THIS MORTGAGE:**

Lender may transfer or assign or sell this Mortgage to anyone without notifying Mortgagor in advance. If Lender does transfer or assign or sell this Mortgage to anyone then the transferee (that is the person, firm, or corporation that buys this Mortgage) gets all rights that Lender has.

**NOTICE:**

Lender may give any written notices regarding the note and this mortgage to Mortgagor by personal delivery or by ordinary mail at the address of the property.

**LENDER'S RIGHTS IF MORTGAGOR FAILS TO KEEP PROMISES AND AGREEMENTS (FORECLOSURE AND SALE):**

If I fail to keep any promise or agreement made in this Mortgage or in the Note, including the promise to pay when due the amounts that Borrower owes to Lender under the Note and under this Mortgage, then Lender may require immediate payment in full of the entire amount then remaining unpaid under the Note and under this Mortgage.

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property, and to have the Property sold. At this sale Lender, or another person, may acquire the property. This is known as "foreclosure and Sale". In any lawsuit for foreclosure and sale, Lender will have the right to collect all the costs allowed by law.

**ENFORCEMENT OF LENDER'S RIGHTS:**

If Lender does not exercise or enforce any of Lender's rights under this Mortgage. Note, or under the law, Lender will still have all those rights and Lender may exercise and enforce them in the future. Each of Lender's rights under the Note and this Mortgage is separate. Lender may exercise and enforce one or more of those rights as well as any of Lender's rights under the law one at a time or all at once.

**LENDER'S OBLIGATION TO DISCHARGE THIS MORTGAGE WHEN THE NOTE AND THIS MORTGAGE ARE PAID IN FULL:**

When Lender has been paid all amounts due under the Note and under this Mortgage, Lender will discharge this Mortgage by delivering a certificate stating that this Mortgage has been satisfied and after that date this Mortgage will be void.

By signing this Mortgage I agree to all of the above.

Witness: _Robert Buchman_                          Mortgagor _Frank H. McIntyre_

                                                        Mortgagor

### Acknowledgement

State of New Jersey

_Burlington_ County } ss

On this _5th_ day of _January_, _2007_, before me personally came and appeared _Frank H. McIntyre_ to me known to be, and who I am satisfied, are the makers of and the persons described in and who executed the foregoing instrument and to having made known to them the contents of this document, they did duly acknowledge to me that they executed, and signed, sealed and delivered the same as their voluntary act and deed and purposes therein expressed.

Prepared by: _____

                                           _Noel C. Titko_
                                              Notary Public
                                             _Noel C. Titko_

---

### REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Lender requests the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, with a copy to P. O. Box 17170, Baltimore, MD 21203, of any default under the superior encumbrance and of any sale or other foreclosure action.

NOEL C. TITKO
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 1/31/08

Sworn to and subscribed before me this _____ day of _____



MB11267PG212

EXHIBIT H

| Fill in this information to identify your case and this filing: | | |
| --- | --- | --- |
| Debtor 1 | **Frank H. McIntyre, Sr.** | |
| | First Name    Middle Name    Last Name | |
| Debtor 2 | | |
| (Spouse, if filing) | First Name    Middle Name    Last Name | |
| United States Bankruptcy Court for the: | DISTRICT OF NEW JERSEY | |
| Case number | | |

☐ Check if this is an amended filing

## Official Form 106A/B

# Schedule A/B: Property                                    12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

   ☐ No. Go to Part 2.

   ■ Yes. Where is the property?

### 1.1

| | | |
| --- | --- | --- |
| **312 Cherokee Drive** | | |
| Street address, if available, or other description | | |
| | | |
| **Browns Mills** | **NJ** | **08015-0000** |
| City | State | Z P Code |
| | | |
| **Burlington** | | |
| County | | |

**What is the property?** Check all that apply

■ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
| --- | --- |
| **$180,000.00** | **$180,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

☐ Check if this is community property
(see instructions)

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here**..........................................................................=>

| |
| --- |
| **$180,000.00** |

**Part 2:    Describe Your Vehicles**

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

EXHIBIT I

Jonathan Schwalb, Esq.
Friedman Vartolo LLP
85 Broad Street, Suite 501
New York, New York 10004
Attorneys for Fay Servicing, LLC as Servicer for Citibank,
N.A., as Trustee for CMLTI Asset Trust
P: (212) 471-5100
Bankruptcy@FriedmanVartolo.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
-----------------------------------------------------------------X

|  |  |
|---|---|
| IN RE: | : CASE NO.: 19-22900 |
|  | : CHAPTER: 7 |
| Frank H. McIntyre, Sr. | : |
|  | : HON. JUDGE.: |
| Debtors | : Christine M. Gravelle |
|  | : |
|  | : HEARING DATE: |
|  | : September 10, 2019 at 10:00 AM |
|  | : |

-----------------------------------------------------------------X

## CERTIFICATION RE POST-PETITION PAYMENT HISTORY ON THE NOTE AND MORTGAGE DATED 11/29/2007

Lindsey Dallmer of full age, employed as AVP, Bankruptcy by Fay Servicing, LLC as Servicer for Citibank, N.A., as Trustee for CMLTI Asset Trust, hereby certifies the following information:

Property Address: 312 Cherokee Drive, Browns Mills, NJ 08015

Mortgage Holder: Fay Servicing, LLC as Servicer for Citibank, N.A., as Trustee for CMLTI Asset Trust

Mortgagor(s)/Debtor(s): Frank H. McIntyre, Sr.

## I. PAYOFF STATEMENT

| | |
|---|---|
| Unpaid Principal Balance: | $28,028.73 |
| Accrued Interest (To July 19, 2019): | $1,183.01 |
| Late Charges: | $0.00 |
| Attorney's Fees & Costs as of (July 19, 2019): | $0.00 |
| Advances Through (July 19, 2019) For: | |

| | |
|---|---|
| Escrow Advance: | $0.00 |
| Insurance Premiums: | $0.00 |
| **Sub-Total of Advances:** | $0.00 |
| Less Escrow Monies: | $0.00 |
| Net Advances: | $0.00 |

| | |
|---|---|
| Interest on Advances To (July 19, 2019): | $0.00 |
| 03/16/2005 Mortgage: | $139,000.00 |
| 11/21/2005 Mortgage: | $31,556.83 |
| 04/13/2006 Mortgage: | $40,630.13 |
| 01/05/2007 Mortgage: | $44,448.01 |

**TOTAL DUE AS OF (July 19, 2019)**                         $284,846.71
Date of Last Payment (N/A)

## II. EQUITY ANALYSIS

Estimated Fair Market Value of Real Estate as of (June 30, 2019):          $180,000.00
Source: Debtor's Schedule A

Liens on the Real Estate:

| | |
|---|---|
| Real Estate Taxes as of (July 19, 2019) (Escrow Advance) | $0.00 |
| First Mortgage (Principal & Interest) as of (July 19, 2019) | $29,211.74 |
| Additional Mortgages | $255,634.97 |

**TOTAL LIENS:**                                                                      $284,846.71

**APPARENT EQUITY AS OF (July 19, 2019)**                          $0.00

I certify under penalty of perjury that the foregoing is true and correct.

8-15-19
(Date of Signature)

Lindsey Dallmer
Signature